332 S.E.2d 127

**Luther F. BELL**

v.

**INLAND MUTUAL INSURANCE COMPANY, a corporation.**

**CAMDEN FIRE ASSOCIATION**

v.

**Lonnie JUSTICE.**

**Nos. 16252, 16257.**

Supreme Court of Appeals of West Virginia.

April 11, 1985.

Rehearing Denied June 11, 1985.

Hudgins, Coulling, Brewster, Morhous & Cameron, Donald T. Caruth, Bluefield, for Inland Mut. Ins. Co.

Steptoe & Johnson, James R. Watson, Charleston, Steptoe & Johnson, Christopher P. Bastien, Clarksburg, for Camden Fire Assn.

Ballard & Brumfield, C. David Brumfield, Welch, for Luther F. Bell and Lonnie Justice.

McHUGH, Justice:

These actions, No. 16252 and No. 16257, involving the appellants, Inland Mutual Insurance Company (hereinafter "Inland Mutual") and Camden Fire Association (hereinafter "Camden Fire"), respectively, contain similar issues and have been consolidated for the purpose of resolution of those issues.

I

A. INLAND MUTUAL

The action involving Inland Mutual is before this Court upon appeal from an order entered June 19, 1983, by the Circuit Court of McDowell County in which that

court denied a motion of Inland Mutual to set aside a default judgment obtained against it by Luther F. Bell, the appellee, for $53,491.85 in compensatory damages and $25,000 in punitive damages plus interest and costs.

In May, 1967, the appellee was injured when he fell from the back of a truck driven by Kenny West and owned by his father, Ozie West. The appellee commenced a civil action against Kenny and Ozie West, however, Kenny West was residing in New Jersey. In February, 1975, service of process was made upon Kenny West but no timely answer was filed. The circuit court entered a default judgment against Kenny West. The court also addressed the issue of the father's liability for the accident. In an order entered on February 23, 1978, Ozie West was dismissed from the action with prejudice. The court, however, entered judgment against Kenny West for $35,000 in compensatory damages plus costs and interest at an annual rate of six percent.

In *Bell v. West*, 168 W.Va. 391, 284 S.E.2d 885 (1981), this Court affirmed the judgment of the circuit court dismissing Ozie West from the action by refusing to extend liability to the father under the family purpose doctrine because of the attenuated connection between Kenny and Ozie West. This Court further affirmed the default judgment against Kenny West. In so doing, we noted the existence of *W.Va. Code*, 17D–4–12(b)(2) [1959], that requires all motor vehicle "liability insurance policies issued in this State to contain a provision making anyone using an insured vehicle with the express or implied permission of the named insured, an additional insured." 168 W.Va. at 394, 284 S.E.2d at 887 n. 1.

The record indicates that soon thereafter the appellee contacted Inland Mutual's counsel by letter and requested Inland Mutual to pay the judgment, including interest and costs, against Kenny West. In September, 1982, the appellee filed a complaint in the Circuit Court of McDowell County against Inland Mutual under *W.Va. Code*, 17D–4–12(b)(2) [1959], alleging that the insurance company wilfully failed to pay the judgment against Kenny West and demanding compensatory and punitive damages. Inland Mutual, by counsel, answered the complaint and denied liability beyond a $10,000 policy limit and asserted defenses to the original personal injury suit against Kenny West.

Approximately one month later, the appellee served upon Inland Mutual interrogatories that were not answered. In February, 1983, the appellee moved the circuit court to compel Inland Mutual to answer the interrogatories. In an order entered on February 4, 1983, the circuit court ordered the appellant to answer the interrogatories "by February 14, 1983 or all defenses of the defendant will be ordered stricken and judgment will be granted to the plaintiff on his pleadings." The interrogatories remained unanswered in contravention of the court's order and in April, 1983, the appellee moved the circuit court to strike the appellant's pleadings under *W.Va.R.Civ.P.* 37(b) and enter default judgment for the appellee. After hearing argument of counsel, the court, in an order entered May 2, 1983, struck the appellant's pleadings, and granted the appellee a judgment by default.

At a jury trial on the issue of damages, the appellee presented four witnesses, one of whom was the appellee. The jury awarded the appellee the amount of the original judgment against Kenny West of $35,000, prejudgment interest upon that amount at an annual rate of 10% from the date of the original award, February 23, 1978, totalling $18,491.85, and $25,000 in punitive damages: a total award of $78,491.85 plus interest and costs. The circuit court denied the appellant's motion to set aside the judgment.

## B. CAMDEN FIRE

The case involving Camden Fire is before us upon appeal from an order of the Circuit Court of McDowell County, entered on December 21, 1983, in which that court denied the appellant's motion under *W.Va. R.Civ.P.* 60(b) to set aside a default judgment obtained against it by Lonnie Justice, the appellee, for $61,276.16 in compensato-

ry damages and $300,000 in punitive damages plus interest and costs.

In August, 1979, the appellee obtained fire insurance from Camden Fire upon real property titled in the name of his son. In 1981, the property was destroyed by fire, however, upon investigation, Camden Fire refused to pay the appellee the benefits under the policy. Camden Fire filed an action for declaratory judgment in the Circuit Court of McDowell County to determine the existence of an insurable interest in the property by the appellee.

The appellee answered the complaint and asserted a counterclaim against Camden Fire for the loss to the property under the terms of the policy. He also joined as a third-party defendant the insurance brokerage firm through which the insurance was purchased. In the counterclaim, the appellee demanded $63,900 in compensatory damages and $25,000 in punitive damages plus interest and costs.

Approximately one year later, the appellee served interrogatories upon Camden Fire and the third-party defendant. Camden Fire failed to answer the interrogatories. The appellee moved the circuit court to compel Camden Fire to answer the interrogatories and in an order entered on February 4, 1983, the appellant was ordered to answer such interrogatories "by February 14, 1983, or judgment will be entered against the plaintiff...." The interrogatories remained unanswered and in April, 1983, the appellee moved the circuit court to strike the appellant's pleadings. In an order entered on May 2, 1983, the court granted the appellee a default judgment and dismissed from the action the insurance broker.

A jury trial was held to determine damages. The jury returned a verdict for $61,276.16 in compensatory damages and $300,000 in punitive damages. The judgment order of the circuit court indicates that the appellee moved the court pursuant to *W.Va.R.Civ.P.* 15(b) to amend the demand for judgment in the counterclaim to reflect an increased demand for punitive damages in the amount of $300,000. The motion was granted and the court awarded the appellee total damages in the amount of $361,276.16 plus interest and costs.

## II

### A. RULE 37(b) DISCOVERY SANCTIONS

A common issue presented by the two cases now before us involves the circuit court's rendering of judgments by default against the appellants as sanctions for their failure to comply with the orders compelling discovery. *W.Va.R.Civ.P.* 37(b), provides, in pertinent part:

(2) If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . . .

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party....[1]

---

1. The spectrum of other sanctions available to a circuit court under Rule 37(b)(2) is as follows:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

. . . .

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

(E) Where a party has failed to comply with an order under Rule 35(a) requiring him to produce another for examination, such orders as are listed in paragraphs (A), (B), and (C) of this subdivision, unless the party failing to comply shows that he is unable to produce such person for examination.

*W.Va.R.Civ.P.* 37 is virtually identical to Rule 37 of the Federal Rules of Civil Procedure. *See Chandos, Inc. v. Samson,* 150 W.Va. 428, 432, 146 S.E.2d 837, 840 (1966); *see also N.C. v. W.R.C.,* 173 W.Va. 434, 317 S.E.2d 793 n. 5 (1984).

■ It should first be established that the imposition of sanctions by a circuit court under *W.Va.R.Civ.P.* 37(b) for the failure of a party to obey the court's order to provide or permit discovery is within the sound discretion of the court and will not be disturbed upon appeal unless there has been an abuse of that discretion. *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747, 751 (1976). *See generally* C. Wright & A. Miller, *Federal Practice and Procedure:* Civil 2d § 2284 (Supp.1983).

The striking of pleadings and the rendering of a judgment by default under Rule 37(b)(2)(C) are considered the harshest sanctions for the failure to comply with an order compelling discovery. *Chandos, Inc. v. Samson, supra.* In *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), the Supreme Court of the United States reversed the dismissal of a complaint for a party's failure to obey a district court's order to produce certain banking documents located in Switzerland. The party argued that production of the document could have led to violations of Swiss law and possible criminal sanctions. The records were eventually confiscated by the Swiss government. The Court in *Rogers* stated:

> The provisions of Rule 37 which are here involved must be read in light of the provisions of the Fifth Amendment that no person shall be deprived of property without due process of law, and more particularly against the opinions of this Court in *Hovey v. Elliott,* 167 U.S. 409 [17 S.Ct. 841, 42 L.Ed. 215 (1897)], and

*Hammond Packing Co. v. Arkansas,* 212 U.S. 322 [29 S.Ct. 370, 53 L.Ed. 530 (1909)]. These decisions establish that there are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause.

357 U.S. at 209, 78 S.Ct. at 1094, 2 L.Ed. at 1265. Based partly upon constitutional considerations, the Court in *Rogers* held "that Rule 37 should not be construed to authorize dismissal of this complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner." 357 U.S. at 212, 78 S.Ct. at 1096, 2 L.Ed.2d at 1267.

The language of *Rogers* has consistently been interpreted to require some evidence of willfulness, contumacy or bad faith on the part of the disobedient party in order to support the imposition of these severe sanctions. *See Chandos, Inc. v. Samson, supra. See generally* 4A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 37.-03[2.5] at 37–78 (Cum.Supp.1984–85). As the United States Court of Appeals for the Second Circuit noted in *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1067 (2d Cir. 1979), however, "the appellate cases commonly cited for this proposition hold only that dismissal is an abuse of discretion where failure to comply was not the result of the *fault* of any party." (emphasis added). The court in *Cine Forty-Second Street Theatre Corp.* affirmed the rendering of a default judgment against a disobedient party where "gross professional negligence" had been found on the part of the party's counsel. *See also Corchado v. Puerto Rico Marine Management, Inc.,* 665 F.2d 410 (1st Cir.1981), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *Affanato v. Merrill Brothers,* 547

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by

the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

F.2d 138 (1st Cir.1977). *But see Edgar v. Slaughter*, 548 F.2d 770 (8th Cir.1977).

In *Cine Forty-Second Street Theatre Corp.*, the court set forth the three-fold purpose of the sanctions contained in Rule 37(b). The court stated:

> Preclusionary orders ensure that a party will not be able to profit from its own failure to comply. *Dellums v. Powell*, 184 U.S.App.D.C. 339, 566 F.2d 231 (1977). Rule 37 strictures are also specific deterrents and, like civil contempt, they seek to secure compliance with the particular order at hand. *Robison v. Transamerica Ins. Co.*, 368 F.2d 37 (10th Cir.1966). Finally, although the most drastic sanctions may not be imposed as 'mere penalties,' *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909); *see Hovey v. Elliott*, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897), courts are free to consider the general deterrent effect their orders may have on the instant case and on other litigation, provided that the party on whom they are imposed is, in some sense, at fault. *National Hockey League v. Metropolitan Hockey club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam); *Societe Internationale pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958).[2]

602 F.2d at 1066. *See also United States v. Sumitomo Marine & Fire Ins. Co., Ltd.*, 617 F.2d 1365 (9th Cir.1980).

■ As a general rule, the rendering of judgment by default as a sanction under Rule 37(b) should be used sparingly and only in extreme situations. *See Affanato v. Merrill Brothers, supra* at 140; *Carluc-*

ci v. Piper Aircraft Corp.*, 102 F.R.D. 472, 488 (S.D.Fla.1984). As the court stated in *Affanato*:

> The essential reason for the traditional reluctance of the courts to default a party is the 'policy of the law favoring the disposition of cases on their merits.' *Richman v. General Motors Corp.*, 437 F.2d 196, 199 (1st Cir.1971) (citing cases).
>
> At the same time, however, in considering wehther default is an appropriate sanction other factors must also be borne in mind, such as 'the time and energies of our courts and the rights of would-be litigants awaiting their turns to have other matters resolved.' *Von Poppenheim v. Portland Boxing & Wrestling Commission*, 442 F.2d 1047, 1054 (9th Cir. 1971), *cert. denied*, 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1972).

*Id.* (footnote omitted). The sanctions available to the circuit court "must be weighed in light of the full record in the case...." *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d at 1068; *see National Hockey League v. Metropolitan Hockey Club*, 427 U.S. at 642, 96 S.Ct. at 2780, 49 L.Ed.2d at 750.

■ In view of the foregoing, we hold that the striking of pleadings and the rendering of judgment by default against a party as sanctions under *W. Va. R. Civ. P.* 37(b) for that party's failure to obey an order of a circuit court to provide or permit discovery may be imposed by the court where it has been established through an evidentiary hearing and in light of the full record before the court that the failure to comply has been due to willfulness, bad faith or fault of the disobedient party and not the inability to comply and, further, that such sanctions are otherwise just.

---

**2.** The Court stated in *National Hockey League, supra:*

> There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order. It is quite reasonable to conclude that a party who has been subjected to such an order will feel duly chastened, so that even though he succeeds in having the order reversed on appeal he will nonetheless comply promptly with future discovery orders of the district court.
>
> But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

427 U.S. at 642–43, 96 S.Ct. at 2780–81, 49 L.Ed.2d at 751.

■ It is also necessary for us to identify the evidentiary framework to be employed during a hearing before a court properly considering the imposition of sanctions under Rule 37(b). Obviously, the party seeking sanctions under Rule 37(b) has the burden of establishing noncompliance with the circuit court's order to provide or permit discovery. Once the noncompliance is established, the burden is upon the disobedient party to avoid the sanctions sought under Rule 37(b) by showing that the inability to comply with the court's order or special circumstances render the particular sanctions unjust. *See Fed.R.Civ.P.* 37(b) advisory committee notes; *see also Falstaff Brewing Corp. v. Miller Brewing Co.,* 702 F.2d 770, 784 (9th Cir.1983); *David v. Hooker, Ltd.,* 560 F.2d 412 (9th Cir.1977); *In re Special Delivery, Inc.,* 16 B.R. 714 (N.D.Ohio 1982); syl. pt. 2, *Ward v. Hester,* 32 Ohio App.2d 121, 288 N.E.2d 840 (1972), *aff'd,* 36 Ohio St.2d 38, 303 N.E.2d 861 (1973). As the court stated in *Falstaff Brewing Corp. v. Miller Brewing Co., supra* at 784: "The party against whom an award of expenses is sought has the burden of showing the special circumstances that make his or her failure to comply substantially justified."

## B. DEFENSES OF APPELLEES RELATING TO SANCTIONS

Both appellants dispute the assertions of the appellees on appeal that they acted willfully, in bad faith or were otherwise at fault when they failed to answer the interrogatories pursuant to the circuit court's orders. The appellants claim that their counsel failed to inform them that interrogatories had been served upon them or that orders had been entered compelling their answers.[3] The appellants contend that if they had known about the interrogatories or the orders compelling discovery they would have answered the interrogatories because they had what they assert are meritorious defenses to the actions and would not, therefore, have risked liability with judgments by default.

Confronted with a similar argument, the court in *Cine Forty-Second Street Theatre Corp.* stated:

Considerations of fair play may dictate that courts eschew the harshest sanctions provided by Rule 37 where failure to comply is due to a mere oversight of counsel amounting to no more than simple negligence, *Affanato, supra,* 547 F.2d at 141; *see SEC v. Research Automation Corp.,* 521 F.2d 585 (2d Cir.1975) (dictum). But where gross professional negligence has been found—that is, where counsel clearly should have understood his duty to the court—the full range of sanctions may be marshalled. Indeed, in this day of burgeoning, costly and protracted litigation courts should not shrink from imposing harsh sanctions where, as in this case, they are clearly warranted.

A litigant chooses counsel at his peril, *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), and here, as in countless other contexts, counsel's disregard of his professional responsibilities can lead to extinction of his client's claim.

602 F.2d at 1068. In *Corchado v. Puerto Rico Marine Management, Inc., supra* at 413, the United States Court of Appeals for the First Circuit, reaching a similar conclusion, noted: "We realize that we are visiting the sins of the attorneys upon the client, but this is an unavoidable side effect of the adversary system."[4]

3. It should be noted that during their respective litigations, both appellants were represented by the same counsel in the circuit court and both appellees were represented by the same counsel.

4. In *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), the Supreme Court of the United States affirmed the dismissal of an action by a district court under *Fed. R.Civ.P.* 41(b), upon the court's own motion, for failure of the plaintiff to prosecute. The Court found that the lower court had not abused its discretion when it dismissed the action, in part, because the plaintiff's counsel failed to appear for a hearing. The Court found that intentional dilatory tactics could be inferred from the overall behavior of the party. With respect to the action of the plaintiff's counsel the Court stated:

There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Peti-

**174**

■ We agree with the above reasoning and hold that where a party's counsel intentionally or with gross negligence fails to obey an order of a circuit court to provide or permit discovery, the full range of sanctions under *W.Va.R.Civ.P.* 37(b) are available to the court and the party represented by that counsel must bear the consequences of counsel's actions. The relative responsibilities of the disobedient party and its counsel in accordance with the foregoing standards is an issue to be raised by the appropriate party before a circuit court when considering a motion for the imposition of sanctions under Rule 37(b). We now turn to an examination of the individual cases.

■ This Court held in syllabus point 1 of *Intercity Realty Co. v. Gibson,* 154 W.Va. 369, 175 S.E.2d 452 (1970):

A default judgment obtained in accordance with the provisions of Rule 55(b), West Virginia Rules of Civil Procedure, is a valid and enforceable judgment and a motion to set aside such judgment will not be granted unless the movant shows good cause therefor as prescribed in Rule 60(b) of the aforesaid Rules of Civil Procedure.

*See W.Va.R.Civ.P.* 55(c); *see also* syl. pt. 3, *Coury v. Tsapis,* 172 W.Va. 103, 304 S.E.2d 7 (1983); syl. pt. 1, *Cordell v. Jarrett,* 171 W.Va. 596, 301 S.E.2d 227 (1982); syl. pt. 1, *Hamilton Watch Co. v. Atlas Container, Inc.,* 156 W.Va. 52, 190 S.E.2d 779 (1972).

■ We further held in syllabus point 3 of *Intercity Realty Co. v. Gibson, supra:* "A motion to vacate a default judgment is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." *See* syl. pt. 3, *McDaniel v. Romano,* 155 W.Va. 875, 190 S.E.2d 8 (1972); *see also* syl. pt. 5, *Toler v. Shelton,* 157 W.Va. 778, 204 S.E.2d 85 (1974) (a motion to vacate a judgment pursuant to Rule 60(b) is generally addressed to the sound discretion of the court).

The records are clear in both cases that due process was satisfied when Inland Mutual and Camden Fire were afforded opportunities for evidentiary hearings upon the appellees' motions for sanctions under Rule 37(b). The records are silent, however, as to whether either of the appellants requested such hearings. The records of both cases reveal that the circuit court heard argument of counsel.

■ In the action involving Inland Mutual there appears to have been no attempt by the appellant to preserve a record regarding the asserted error of the circuit court on this issue. Inland Mutual, by counsel, objected to the entry of the default

---

tioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' *Smith v. Ayer,* 101 U.S. [ (11 Otto) ] 320, 326 [25 L.Ed. 955]. 370 U.S. at 633–34, 82 S.Ct. at 1390, 8 L.Ed.2d at 740.

But see *Edgar v. Slaughter,* 548 F.2d 770, 773 (8th Cir.1977), wherein the United States Court of Appeals for the Eighth Circuit balanced the wide latitude a trial court must possess to control pretrial discovery with the concept "that in our system of justice the opportunity to be heard is a litigant's most precious right and should be sparingly denied." The court continued:

Prior to dismissal or entering a default judgment, fundamental fairness should require a district court to enter an order to show cause and hold a hearing, if deemed necessary, to determine whether assessment of costs and attorney fees or even an attorney's citation for contempt would be a more just and effective sanction. Dismissal and entry of a default judgment should be the rare judicial act. When noncompliance is the result of dilatory conduct by counsel, the courts should investigate the attorney's responsibility as an officer of the court and, if appropriate, impose on the client sanctions less extreme than dismissal or default, unless it is shown that the client is deliberately or in bad faith failing to comply with the court's order.

*See also Cine Forty-Second Street Theatre Corp., supra* at 1069 (Oakes, J., concurring) ("It would be with the greatest reluctance ... that I would visit upon the client the sins of counsel, absent client's knowledge, condonation, compliance, or causation"); *Hawkins v. Fulton County,* 96 F.R.D. 416, 422 (N.D.Ga.1982).

judgment but it failed to develop at an evidentiary hearing the circumstances of that default judgment or otherwise preserve a record of the proceedings before the court. The record before us is clear that the appellants' counsel appeared at all hearings before the circuit court.

Furthermore, unlike Camden Fire, Inland Mutual failed to seek relief from the default judgment through a Rule 60(b) motion in accordance with the well established standards set forth above. As we noted in *N.C. v. W.R.C.*, 173 W.Va. 434, 317 S.E.2d 793, 795 (1984): "The primary vehicle by which a party may seek relief from a judgment or order in a circuit court is contained in Rule 60(b) of the West Virginia Rules of Civil Procedure." By utilizing Rule 60(b), Inland Mutual could have developed a record on the reasons for the failure to answer the interrogatories.

It is axiomatic that this Court "can consider only those matters in the record in determining whether the court abused its discretion." *Evans v. Huntington Publishing Inc.*, 168 W.Va. 222, 283 S.E.2d 854, 855 (1981); *see also Thornton v. C.A.M.C.*, 172 W.Va. 360, 305 S.E.2d 316, 320–21 (1983); *Hylton v. Provident Life & Accident Insurance Co.*, 159 W.Va. 728, 226 S.E.2d 453 (1976). Based upon the record before us, the circuit court did not abuse its discretion when it rendered the default judgment as a result of Inland Mutual's failure to comply with the court's order compelling discovery; nor was there an abuse of discretion on the refusal to set the default judgment aside.[5]

■ In the action involving Camden Fire, the appellant moved the circuit court to set aside the default judgment pursuant to Rule 60(b) and requested, *inter alia*, an evidentiary hearing to determine the propriety of the default judgment. We believe that the circuit court abused its discretion when it denied Camden Fire an opportunity to develop a record in that regard. We, therefore, reverse the Circuit Court of McDowell County on this issue and remand this case to that court for a hearing to develop the facts surrounding the rendering of the default judgment against Camden Fire consistent with this opinion.

There are additional matters from the individual cases that remain to be resolved. We will first discuss other assignments of error from the action involving Inland Mutual.

### III

Inland Mutual also contends that the circuit court erred when it allowed the jury to consider prejudgment interest at an annual rate of ten percent on the judgment against it which resulted from the verdict against Kenny West on February 23, 1978. The appellant does not question the propriety of the award of prejudgment interest or the period of time for which it was calculated but does challenge the annual rate of interest the jury was allowed to consider. The appellant asserts that the ten percent annual interest rate should not have been allowed because the original judgment against Kenny West of $35,000 was accruing, by order of the court, postjudgment interest at an annual rate of six percent.

■ In 1981, the legislature amended *W.Va.Code*, 56–6–31 [1981], which codified the availability of prejudgment interest in actions "[e]xcept where it is otherwise provided by law...."[6] That statutory provi-

5. It should be emphasized that the record before us clearly indicates that Inland Mutual has been involved in this litigation since Luther Bell, the appellee, filed the complaint against Kenny and Ozie West in 1967. Despite the judgment rendered against one of Inland Mutual's insureds many years ago, the appellee remains uncompensated for his injuries. That delay is disturbing. Inland Mutual's actions in this case, in short, are certainly not noteworthy nor examples to be followed by other insurance companies.

6. *W.Va.Code*, 56–6–31 [1981], is a partial codification of this Court's holdings in *Bond v. City of Huntington*, 166 W.Va. 581, 276 S.E.2d 539 (1981). *See Kirk v. Pineville Mobile Homes, Inc.*, 172 W.Va. 693, 310 S.E.2d 210, 212 n. 1 (1983). In *Bond*, we extended the traditional availability of prejudgment interest in actions based on contract, *W.Va.Code*, 56–6–27 [1931], to actions based on tort. In syllabus point 5 of *Bond* we held that "[a] rule permitting additional damages by way of compensatory interest on pecuniary losses incurred prior to trial in personal injury actions as well as wrongful death claims

sion had previously only provided for post-judgment interest. The 1981 amended version of that statute provides, in relevant part, as follows:

> [I]f the judgment or decree, or any part thereof, is for special damages, as defined below, or for liquidated damages, the amount of such special or liquidated damages shall bear interest from the date the right to bring the same shall have accrued, as determined by the court. Special damages includes lost wages and income, medical expenses, damages to tangible personal property, and similar out-of-pocket expenditures, as determined by the court.

The amended statute further increased the maximum annual rate on postjudgment and prejudgment interest from six percent to ten percent. It provides: "The rate of interest shall be ten dollars upon one hundred dollars per annum, and proportionately for a greater or lesser sum, or for a longer or shorter time, notwithstanding any other provisions of law." Prior to *W.Va.Code*, 56-6-31 [1981], the maximum legal rate of interest was six percent per annum. *W.Va.Code*, 47-6-5(a) [1974].

With respect to the rate of interest to be applied to the amount sought from Inland Mutual the circuit court erred in allowing the application of ten percent interest on the sum back to February 23, 1978, the date the verdict was rendered against Kenny West. It is a general rule, as stated in McCormick, *supra* § 52 at 211, that "[i]f the statutory rate is changed after the cause of action accrues, the interest should be allowed at the old rate before, and at the new after, the altering enactment takes effect." *See Coastal Industrial Water Authority v. Trinity Portland Cement Division, General Portland Cement Co.*, 563 S.W.2d 916 (Tex.1978); *Haag v. Pugh*, 545 S.W.2d 22, 24 (Tex.Civ. App.1976). *See generally* 25 C.J.S. *Damages* § 92(1) (Cum.Supp.1984).

The 1981 amendment to *W.Va. Code*, 56-6-31 [1981] was passed by the legislature on April 6, 1981 and became effective on July 5, 1981, 90 days from its passage. 1981 W.Va.Acts c. 205. We therefore hold that prejudgment interest accruing on amounts as provided by law prior to July 5, 1981, is to be calculated at a maximum annual rate of six percent under *W.Va.Code*, 47-6-5(a) [1974], and thereafter, at a maximum annual rate of ten percent in accordance with the provisions of *W.Va.Code*, 56-6-31 [1981].

Accordingly, the judgment of the Circuit Court of McDowell County is reversed on the interest issue as to Inland Mutual, and this case is remanded to that court for recalculation of the prejudgment interest due the appellee consistent with the principles set forth above.

Inland Mutual's petition for appeal addresses other aspects of the action below including errors concerning the statute of limitations, the propriety of the punitive damages, evidentiary issues and instructions to the jury during the trial on damages. With regard to these contentions we find no error on the part of the circuit court.

## IV

In the action involving Camden Fire, the remaining assignment of error concerns the amount of punitive damages awarded to the appellee by the jury. In his counterclaim, the appellee demanded, *inter alia*, $25,000 in punitive damages. The jury, however, returned a verdict for punitive damages in the amount of $300,000. Camden Fire contends that under *W.Va. R.Civ.P.* 54(c) the circuit court erred when it granted the appellee's motion after the verdict to amend its original demand for judgment in the counterclaim to reflect the increased award of punitive damages. Rule 54(c) provides, in pertinent part, as follows: "A judgment by default shall not

---

is consistent with our prior case law and our liberal interest statute." In both contexts, prejudgment interest is available to a litigant as part of compensatory damages "where there is an ascertainable pecuniary loss...." 166 W.Va. at 599, 276 S.E.2d at 548. *See also* syl. pt. 1,

*Kirk v. Pineville Mobile Homes, Inc., supra;* syl. pt. 12, *Ilosky v. Michelin Tire Corp.*, 172 W.Va. 435, 307 S.E.2d 603 (1983). *See generally* C. McCormick, *Handbook on the Law of Damages* § 54 at 213 (1935).

be different in kind from or exceed in amount that prayed for in the demand for judgment."

There is disagreement among commentators and cases on the issue of whether an award of damages in a default judgment may exceed the original demand for judgment. The distinction between the two positions primarily lies in the type of default judgment that has been rendered. In *Sarlie v. E.L. Bruce Co.*, 265 F.Supp. 371, 377 (S.D.N.Y.1967), the United States District Court for the Southern District of New York stated that "[j]udgments by default are of two general kinds: (1) for want of appearance, and (2) for failure to plead or to otherwise defend as provided by the rules, although the party has initially appeared in the action."

The first position advocates strict application of Rule 54(c) to all default judgments regardless of the manner in which they arise. This position is advanced in 10 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure: Civil 2d* § 2663 (Supp.1983), when it states as follows:

> The theory of this provision is that once the defending party receives the original pleading he should be able to decide on the basis of the relief requested whether he wants to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should he attempt to limit the scope and size of the potential judgment against him by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award. * * * In sum, then, a default judgment may not extend to matters outside the issues raised by the pleadings or beyond the scope of the relief demanded. A judgment in a default case that awards relief that either is more than or different in kind from that requested originally is null and void and defendant may attack it collaterally in another proceeding.

*Id.* at 139–42 (footnotes omitted).

The above commentators recognize that "[a]lthough this portion of Rule 54(c) appears relatively simple to apply, one difficult, and as yet not definitively resolved, problem is presented when judgment is rendered in a situation in which the party appeared but subsequently failed to plead or otherwise defend the action." *Id.* at 142. The commentators concluded, however, that "[t]he absence of any words of qualification or differentiation in the first sentence of Rule 54(c) indicates that the provision is intended to apply to all cases of default, whether they involve a party who 'has appeared' or one 'in default for failure to appear.'" *Id.* at 142–3 (footnotes omitted). *See Fong v. United States*, 300 F.2d 400, 413 (9th Cir.), *cert. denied*, 370 U.S. 938, 82 S.Ct. 1584, 8 L.Ed.2d 807 (1962); *see also Securities and Exchange Commission v. Wencke*, 577 F.2d 619, 623 (9th Cir.), *cert. denied*, 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978); *Henry v. Sneiders*, 490 F.2d 315, 317 (9th Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974).

The second approach to Rule 54(c) was pioneered by the United States Court of Appeals for the Eighth Circuit in *Peitzman v. City of Illmo*, 141 F.2d 956 (8th Cir.), *cert. denied*, 323 U.S. 718, 65 S.Ct. 47, 89 L.Ed. 577 (1944). The court in *Peitzman* stated:

> Rule 54(c) apparently is a general rule applicable in case of a non-appearing defendant in complete default. On a hearing on the question of damages, under Rule 55(b) a defendant, though in default, is in court on a hearing limited to the question of the amount of damages, to the same extent that he is in court in a trial on the merits, and we think amendments at the trial are as appropriate in the one case as in the other. Amendments to a pleading may be allowed at the hearing on damages as to the relief prayed, subject to the right of the defendant, if taken by surprise or put to a disadvantage, to ask for a continuance or for time in which to prepare to meet the enlarged claim. (citations omitted). In general, it may be said that a change in the amount prayed for is not of vital importance, as the prayer for relief is in

fact no part of the claim or cause of action stated.

141 F.2d at 962. *See Trans World Airlines, Inc. v. Hughes,* 449 F.2d 51, 78–79 (2d Cir.1971), *rev'd on other grounds, Hughes Tool Co. v. Trans World Airlines, Inc.,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); *Sarlie v. E.L. Bruce Co., supra* at 377–78; *see also Growth Properties, Inc. v. Klingbeil Holding Co.,* 419 F.Supp. 212, 220–21 (D.Md.1976). *See generally* 6 J. Moore & J. Lucas, *Moore's Federal Practice* § 54.61 at 1232–33 (Cum.Supp. 1984–85); Clark & Moore, *A New Federal Civil Procedure II, Pleadings and Parties,* 44 Yale L.J. 1291, 1303 (1935).[7]

In *Trans World Airlines, Inc. v. Hughes, supra,* the United States Court of Appeals for the Second Circuit was presented with facts similar to the ones in the case involving Camden Fire. The court in *Trans World Airlines, Inc.* concluded:

> Although the authorities do not appear to be in agreement ... we are of the view that there is no sound basis for restricting TWA to the precise damages originally sought in a case where damages alleged were unliquidated, and where defendant did not default by non-appearance, but rather because of non-compliance with discovery procedures, and indeed was granted a full trial on the question of damages actually caused by the allegation established by its default.

*Id.* at 78.

■■■■ We agree with the reasoning espoused in *Trans World Airlines, Inc., supra,* and hold that the restriction contained in *W.Va.R.Civ.P.* 54(c) that "[a]

judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment," does not apply where the judgment by default has been rendered as the result of the defaulting party's failure to obey an order of the circuit court to provide or permit discovery under *W.Va.R.Civ.P.* 37(b) *and the defaulting party otherwise appears at the subsequent trial on the issue of damages.* The circuit court, therefore, did not err when it granted the appellee's motion to increase his original demand for judgment.

Based upon the foregoing, the orders of the Circuit Court of McDowell County with respect to both cases now before us are affirmed in part, reversed in part and remanded to that court for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

BROTHERTON, Justice, dissenting:

While I agree with most of the majority opinion, I must disagree with their interpretation of Rule 54(c) in Syl. pt. 8 as it applies to default judgments in cases where a party has appeared and the default judgment is issued as a sanction. The rule mandates that "[a] judgment by default *shall not* be different in kind from or *exceed in amount* that prayed for in the demand for judgment." (Emphasis added.) The meaning of the phrase is clear and quite apparent: that default judgments shall not exceed the amount prayed for in the demand for judgment. In interpreting

---

**7.** Professor Moore initially advocates a broader view than that expressed in *Peitzman v. City of Illmo, supra.* In his treatise he states as follows:

> It is arguable that, as a matter of policy, the limitations of the Rule should apply only to a judgment by default for want of appearance and not to a default judgment where the defendant has appeared. In the latter situation a party who has put in an appearance is entitled to receive notice of all proceedings in the action, including a written notice of the application for judgment at least 3 days prior to the hearing on such application.... [This factor] would warrant a Rule authorizing the court to render such a judgment as the complainant proved himself entitled to, no matter

what the initial pleading may have requested. But Rule 54(c) does not go that far; it makes no distinction in the type of judgment by default; and hence all judgments by default are subject to its limitations.

> Where, however, the defendant appears at the hearing on the application for judgment, the court, in the exercise of a sound discretion, may permit the claimant to amend his prayer for relief. This is as it should be, for as earlier noted Rule 54(c) is to be read in conjunction with certain related rules, and one of these is Rule 15 dealing liberally with amendments.

6 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 54.61 at 1231–33.

a rule the Court should follow the same rules as when it is construing a statute. One of the most honored of these rules is that the Court should not read a different meaning into a statute where the plain meaning is clear. *See, e.g., Crockett v. Andrews*, 153 W.Va. 714, 718, 172 S.E.2d 384, 386–87 (1970). Therefore, whenever a default judgment is entered it should not be allowed to exceed the amount in the demand for judgment. Whether the default judgment was entered as a sanction or whether or not the party appeared is irrelevant.

Because the majority gives an excellent discussion of both views of the interpretation of Rule 54(c), I shall not rehash the matter here. Despite their thorough analysis, however, I feel the majority has reached the wrong conclusion and I, therefore, respectfully note my dissent.