IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

**FILED**

**April 1, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 11-1512

OHIO POWER COMPANY and AMERICAN ELECTRIC
POWER SERVICE CORPORATION,
Petitioners

v.

PULLMAN POWER, LLC, STRUCTURAL GROUP, LLC,
and ERSHIGS, INC.,
Respondents

Appeal from the Circuit Court of Marshall County
The Honorable David W. Hummel, Jr., Judge
Civil Action No. 06-C-153M

AFFIRMED

Submitted: January 23, 2013
Filed: April 1, 2013

Brian R. Swiger, Esq.
Michael P. Leahey, Esq.
Jackson Kelly, PLLC
Charleston, West Virginia
Attorneys for Petitioner Ohio Power
Company and American Electric Power
Corporation

Thomas P. Mannion, Esq.
Andrew D. Byrd, Esq.
Mannion & Gray Co., L.P.A.
Charleston, West Virginia

George N. Stewart, Esq.
Sharon Z. Hall, Esq.
Zimmer Kunz, PLLC
Greensburg, Pennsylvania
Attorneys for Pullman Power, LLC
and Structural Group, Inc.

Tiffany Durst, Esq.
Kala Sowers, Esq.
Pullin, Fowler, Flanagan,
Brown & Poe, PLLC
Morgantown, West Virginia
Attorneys for Ershigs, Inc.

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1. "The imposition of sanctions by a circuit court under *W. Va. R. Civ. P.* 37(b) for the failure of a party to obey the court's order to provide or permit discovery is within the sound discretion of the court and will not be disturbed upon appeal unless there has been an abuse of that discretion." Syl. Pt. 1, *Bell v. Inland Mut. Ins. Co.*, 175 W. Va. 165, 332 S.E.2d 127 (1985).

2. "Although Rules 11, 16, and 37 of the West Virginia Rules of Civil Procedure do not formally require any particular procedure, before issuing a sanction, a court must ensure it has an adequate foundation either pursuant to the rules or by virtue of its inherent powers to exercise its authority. The Due Process Clause of Section 10 of Article III of the West Virginia Constitution requires that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case. Thus, a court must ensure any sanction imposed is fashioned to address the identified harm caused by the party's misconduct." Syl. Pt. 1, *Bartles v. Hinkle*, 196 W. Va. 381, 472 S.E.2d 827 (1996).

3. "In formulating the appropriate sanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record

i

if it decides a sanction is appropriate. To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case." Syl. Pt. 2, *Bartles v. Hinkle*, 196 W. Va. 381, 472 S.E.2d 827 (1996).

4.     "Imposition of sanctions of dismissal and default judgment for serious litigation misconduct pursuant to the inherent powers of the court to regulate its proceedings will be upheld upon review as a proper exercise of discretion when trial court findings adequately demonstrate and establish willfulness, bad faith or fault of the offending party." Syl. Pt. 7, *State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders*, 226 W. Va. 103, 697 S.E.2d 139 (2010).

5.     "'Where a party's counsel intentionally or with gross negligence fails to obey an order of a circuit court to provide or permit discovery, the full range of sanctions under *W. Va. R. Civ. P.* 37(b) is available to the court and the party represented by that counsel must bear the consequences of counsel's actions.' Syl. Pt. 4, *Bell v. Inland Mut. Ins. Co.*, 175 W. Va. 165, 332 S.E.2d 127, *cert. denied sub nom. Camden Fire Ins. Ass'n v. Justice*, 474 U.S. 936, 106 S.Ct. 299, 88 L. Ed.2d 277 (1985)."  Syl. Pt. 2, *Woolwine v. Raleigh Gen. Hosp.*,194 W. Va. 322, 460 S.E.2d 457 (1995).

Per Curiam:

This case is before the Court upon the appeal of Ohio Power Co. ("Ohio Power") and America Electric Power Service Corp. ("American Electric" and sometimes also referred to as "AEP") from the circuit court's order dismissing the Petitioners' cross-claims against the Respondents, Pullman Power LLC ("Pullman Power"), Structural Group, Inc.,[1] and Ershigs, Inc. ("Ershigs"). The circuit court ordered that the cross-claims be dismissed as a sanction for violating the West Virginia Rules of Civil Procedure and its scheduling order. The Petitioners argue that the circuit court erred in dismissing their cross-claims against the Respondents under West Virginia Rule of Civil Procedure 37(b)(2)(C)[2] as a sanction for what the Petitioners contend was their late supplementation of discovery

---

[1] Structural Group, Inc., is a related entity of Pullman Power. Both entities, therefore, will be collectively referred to as "Pullman Power."

[2] West Virginia Rule of Civil Procedure 37(b)(2)(C) provides, in pertinent part that:

> if a party fails to supplement as provided for under Rule 26(e), or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others are the following:
>     . . . .
>     (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party [.]

1

responses. Upon a review of the parties' briefs and arguments, the appendix record, and all other matters submitted before the Court, we affirm the decision of the circuit court.

## I. Facts and Procedural History

The matter before the Court arises from a catastrophic fire that occurred on March 4, 2006, inside a flue gas desulphurization stack then under construction at the Mitchell Power Plant located in Moundsville, Marshall County, West Virginia. An employee for the Respondent Pullman Power was killed and two of his coworkers were injured as a result of this fire. The stack was being constructed by the Respondents for the owner and operator of the Mitchell Power Plant, the Petitioner, Ohio Power. The Petitioner, American Electric, is an affiliated entity of Ohio Power, and was responsible for certain engineering decisions associated with the power plant.

On June 30, 2006, the plaintiffs[3] brought an action against numerous entities including the Petitioners, Ohio Power and American Electric, and the Respondents, Pullman Power and Ershigs. In response to the complaint, the Petitioners denied liability and cross-claimed against the Respondents alleging that it was the Respondents' negligence in the performance of the contract work[4] being done on the stack that caused the fire.[5]

---

[3]The plaintiffs were the deceased worker's estate and the two other injured workers.

[4]There was a general contract between American Electric and Pullman Power that
(continued...)

2

On January 4, 2007, the circuit court entered a scheduling order, establishing a discovery completion date of October 30, 2007. That discovery completion date was amended by the court in a pretrial order entered June 25, 2010. Pursuant to the pretrial order, all discovery was to be completed by January 14, 2011. The new trial date was April 19, 2011, with the final pretrial conference scheduled for April 14, 2011.

On or about July 16, 2010, Brian Swiger, current counsel for the Petitioners, filed a notice of appearance with the circuit court. By order entered August 2, 2010, the circuit court entered an order substituting the Petitioners' current counsel for former counsel, Edward A. Smallwood and the law firm of Swartz Campbell PLLC.

On March 3, 2011, approximately a month and a half before trial was to begin, counsel for the Petitioners contacted counsel for all other parties and advised them that the Petitioners had just discovered the existence of 750,000 to 1,500,000 pages of electronic

---

[4](...continued)
contained an express indemnification provision.

[5]There were also cross-claims filed by the Respondents against the Petitioners similarly claiming that the fire was caused by the Petitioners or that the Petitioners were solely at fault.

information on a hard drive that had never been previously reviewed by the Petitioners for discovery purposes.[6]

A little over a month later, on April 13, 2011, the Petitioners produced some of the electronically stored information from the hard drive in "response to the discovery requests plaintiffs have served to date." Approximately 107,540 pages of documents were produced.

The next day the Petitioners produced another 180,115 pages of documents in response to discovery requests made by the Respondents. The Respondent Pullman Power filed the first motion for sanctions arising out of the late production of documents by the Petitioners. The sanction sought by the Respondent Pullman Power was an adverse inference instruction in which the jury would be instructed that all 1,500,000 pages of documents contained information adverse to the Petitioners' position. Alternatively, Pullman Power sought a continuance of trial.

---

[6]To be clear, the Petitioners' current counsel represents that the conduct giving rise to the sanction imposed in this case falls on the Petitioners' former counsel, Edward A. Smallwood and the law firm of Swartz Campbell PLLC, who knew about the electronic data that had been captured by American Electric during the discovery phase of the case.

During the pretrial hearing, there was some discussion between the circuit court and the parties regarding the motion for sanctions that had been filed by the Respondent Pullman Power. Mr. Swiger, current counsel for the Petitioners, informed the circuit court about the volume of documents at issue and why the Petitioners' former counsel, Mr. Smallwood, did not review the documents and produce those documents susceptible to discovery. According to Mr. Swiger, Mr. Smallwood explained to him that the electronic capture of documents was done by a paralegal, who worked for American Electric and that the electronic capture had been over-inclusive. Mr. Smallwood told Mr. Swiger that he opted to do nothing with the electronic capture done by the paralegal. Rather, Mr. Smallwood chose to go to the individuals who were going to be witnesses in the case and other sources to compile the documents that he eventually produced during discovery. Based upon the representations made by current counsel during the pretrial hearing, the circuit court instructed the parties that he was not going to continue the case.[7] The circuit court directed the Petitioners to continue to produce documents as the documents became available. The circuit court also requested the Respondents and the plaintiffs' counsel to draft a proposed adverse inference instruction.

On April 18, 2011, the day before trial was to begin, the Respondent Pullman Power filed a second motion for sanctions against the Petitioners. In this motion, Pullman

[7]The lawsuit had been ongoing since 2006.

5

Power argued that "AEP's late production [of the documents at issue] is tantamount to an ambush on the eve of trial, and is highly prejudicial to [the] Pullman Power Defendants." Pullman Power requested the circuit court to dismiss the Petitioners' cross-claims filed against it.[8] The next day, the Respondent Ershigs also filed a motion for sanctions against the Petitioner asking the circuit court to strike the Petitioners' cross-claims against it or, alternatively, grant a continuance of the trial.

On April 20, 2011, outside the presence of the jury, the circuit court conducted an "in court settlement discussion," which was brought about by the defendants reaching a settlement with the plaintiffs. During this discussion, the circuit court referenced the Respondents' motions for sanctions against the Petitioners and the Petitioners' response to those motions. Counsel for the Petitioners, Mr. Swiger, stated to the circuit court that "[w]e have to, at least, create a record with regard to that motion [referring to the motion for sanctions]." The circuit court agreed with this statement.

Thereafter, the circuit court deemed what it had already heard in the pretrial hearing as constituting an evidentiary hearing for purposes of the motions for sanctions. The circuit court stated:

---

[8]Alternatively, the Respondent Pullman Power sought leave to file an amended cross-claim or a continuance of the trial.

THE COURT: [I]t appears as though the Court or some authority–there is authority that there needs to be or highly recommended a hearing–an evidentiary hearing which Mr. Swiger [AEP's counsel] mentioned a hearing and arguments on that account relative and prior to the Court making a determination to sanction, as has been requested.

Obviously, at that stage, there is not going to be a continuation of the trial, so that one is out the door. So, this would be whether or not the Court would grant a sanction dismissing cross-claims in this instance and I think there was–anyway, that's the cleanest part.

The Court, in pretrial hearings–the final pretrial hearing on this previous Thursday, as well as yesterday morning, heard representation–proffers from counsel for Pullman, counsel maybe for Ershigs, certainly counsel–proffers from counsel from Ohio Power Company and American Electric Power Service Corporation regarding the documents that are at issue, electronically stored, preserved . . . the Court believes that those hearings and representations and proffers, being that counsel for–I'm going to say AEP, are officers of this [C]ourt. They made those proffers–representations to this Court, and I believe it was primarily Mr. Swiger, backed up by Mr. Leahey [counsel for AEP]–Mr. Leahey seemed to be the more technical or have more technical information . . . .

. . . .

THE COURT: What I'm saying is I believe that that will suffice; those representations from officers of the court during the final pretrial as well as the ultimate pretrial before picking the jury.

The Court will accept that and deem that to have been the evidentiary hearing. And based on those representations–the law as it is–the Court agrees with Pullman Power's more elaborate memorandum in support . . . and does, in fact, grant motions for sanctions to include but not be limited to–will include dismissal of cross-claims by the power company defendants against–over and against both Pullman as well as Ershigs. Objections and exceptions are preserved.

7

At the conclusion of this ruling, counsel for the Petitioners offered no specific objection to the circuit court deeming the prior arguments and proffers to be the evidentiary hearing.

Months later, on September 30, 2011, the circuit court entered a detailed twelve-page order granting the Respondents' motions for sanctions against the Petitioners. The circuit court found that the Petitioners' late production of documents "constituted unjustified non-compliance with the West Virginia Rules of Civil Procedure regarding the production of documents, was in contravention of the deadlines imposed by the Court's Pre-Trial Conference Order, and violated Rule 37(b)(2) of the West Virginia Rules of Civil Procedure." The circuit court further found that the Petitioners' conduct "unduly prejudiced" the Respondents' rights and that there was "[n]o just reason or excuse" for the Petitioners' violation of the West Virginia Rules of Civil Procedure or the circuit court's scheduling order. Finally, the circuit court found that the Petitioners' failure to timely respond to discovery was "willful and cannot be disputed." The circuit court dismissed the Petitioners' cross-claims against the Respondents. This appeal followed.

## II. Standard of Review

This Court has previously held that

> [t]he imposition of sanctions by a circuit court under *W. Va. R. Civ. P.* 37(b) for the failure of a party to obey the court's

8

order to provide or permit discovery is within the sound discretion of the court and will not be disturbed upon appeal unless there has been an abuse of that discretion.

Syl. Pt. 1, *Bell v. Inland Mut. Ins. Co.*, 175 W. Va. 165, 332 S.E.2d 127 (1985).

## III. Argument

The sole issue before the Court is whether the circuit court abused its discretion in dismissing the Petitioners' cross-claims against the Respondents as a sanction for the Petitioners' violation of the discovery deadline set by the circuit court in its scheduling order. The Petitioners argue that at the time that sanctions were sought they were not in violation of any direct court order requiring them to produce documents and had not engaged in any pattern of wrongdoing. The Petitioners maintain that the circuit court improperly focused on the number of documents not produced, rather than on the import or impact of the documents to the case. Finally, the Petitioners argue that the circuit court's dismissal of the cross-claims was premature because the court did not first conduct an evidentiary hearing. The Respondents argue that the Petitioners were in direct "defiance" of the circuit court's June 25, 2010, order which mandated that all discovery be complete by January 14, 2011. The Respondents further maintain that the Petitioners were given an opportunity to make a complete and full evidentiary record.

Most recently, in *State ex rel. Richmond American Homes of West Virginia, Inc. v. Sanders*, 226 W. Va. 103, 697 S.E.2d 139 (2010), this Court addressed a circuit court's ability to impose sanctions including the striking of pleadings and defenses, as well as entering a default judgment against a party. In *Richmond American Homes*, the sanctions were imposed as a result of the circuit court finding that Richmond American Homes had "'engaged in a pattern of extensive litigation misconduct.'" *Id.* at 107, 697 S.E.2d at 143. The misconduct identified in the orders included: (1) direct contact by letter from the corporate president of Richmond American Homes to some of the homeowners over the homeowners' counsels' prior objection to such contact; (2) discovery misconduct; and (3) attempts during a settlement conference by Richmond's in-house counsel to enter into discussions with the homeowners' counsel about potential employment with the company. *Id.* This Court issued a writ of prohibition prohibiting the imposition of the sanctions, not because it disagreed with the sanctions imposed, but because the orders before the Court lacked the specificity needed to conduct review of the sanctions. Thus, the case was remanded for further proceedings. *Id.* at 114, 697 S.E.2d at 150.

In reaching this decision, we recognized the circuit court's "'inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction.' 14 Am. Juris., Courts, section 171." Syl. Pt. 3, in part, *Shields v. Romine*, 122 W. Va. 639, 13 S.E.2d 16 (1940). "The inherent power of courts to sanction

10

misconduct includes the authority to enter default judgment orders in appropriate circumstances." *Richmond Am. Homes*, 226 W. Va. at 105, 697 S.E.2d at 141, Syl. Pt. 4. The Court, however, has also recognized that "[t]he striking of pleadings and the rendering of a judgment by default under rule 37(b)(2)(C) are considered the harshest sanctions for the failure to comply with an order compelling discovery." *Bell*, 175 W. Va. at 171, 332 S.E.2d at 132.

The Court has previously held in syllabus point one of *Bartles v. Hinkle*, 196 W. Va. 381, 472 S.E.2d 827 (1996), that, as a general rule,

> [a]lthough Rules 11, 16, and 37 of the West Virginia Rules of Civil Procedure do not formally require any particular procedure, before issuing a sanction, a court must ensure it has an adequate foundation either pursuant to the rules or by virtue of its inherent powers to exercise its authority. The Due Process Clause of Section 10 of Article III of the West Virginia Constitution requires that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case. Thus, a court must ensure any sanction imposed is fashioned to address the identified harm caused by the party's misconduct.

*Id.* at 384, 472 S.E.2d at 830, Syl. Pt. 1. The Court further held in syllabus point two of *Bartles*:

> In formulating the appropriate sanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. To determine what

11

will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case.

*Id.* at Syl. Pt. 2.

Finally, the Court held in syllabus point seven of *Richmond American Homes*, that "[i]mposition of sanctions of dismissal and default judgment for serious litigation misconduct pursuant to the inherent powers of the court to regulate its proceedings will be upheld upon review as a proper exercise of discretion when trial court findings adequately demonstrate and establish willfulness, bad faith or fault of the offending party." 226 W. Va. at 106, 697 S.E.2d at 142, Syl. Pt. 7.

In determining whether the circuit court properly exercised its discretion in dismissing the Petitioners' cross-claims as a sanction for violating the circuit court's scheduling order, we readily recognize that the circuit court engaged in a thorough examination of the equitable principles established by the Court in *Bartles*. 196 W. Va. at 384, 472 S.E.2d at 830, Syl. Pt. 2. First, the circuit court determined that at the time the sanction of dismissal was sought by the Respondents and imposed by the circuit court, the Petitioners were in direct violation of the circuit court's scheduling order. Further, the circuit court found that the Petitioners' late production of the first "hundreds of thousands of pages

12

of documents" a week before trial "constituted unjustified noncompliance" with the West Virginia Rules of Civil Procedure. The circuit court also found that the Petitioners had previously "run afoul of the discovery rules," based upon a circuit court order "compelling AEP to respond to Plaintiffs' discovery requests." The circuit court determined that the Petitioners' failure "to timely respond to discovery sent years ago and its noncompliance" with the scheduling order was "willful." The circuit court found that the Petitioners' conduct "had not only impeded the fact-finding process, but subverted it altogether." Consequently, the circuit court determined that the "discovery violation has impacted this case on every conceivable level" and "presents a serious threat to the administration of justice."

While the Petitioners attempt to downplay the gravity of their violation of the scheduling order, this Court has repeatedly stated that it does not condone such conduct when done so willfully. *See, e.g., Richmond Am. Homes*, 226 W. Va. at 106, 697 S.E.2d at 142; *Bell*, 175 W. Va. at 168, 332 S.E.2d at 129, Syl. Pt. 2. The magnitude of the violation of the scheduling order in this case stems from the massive volume of documents that went completely unchecked by the Petitioners and their former counsel during the discovery process. The existence of these documents in the computer capture was known to both the Petitioners and the Petitioners' former counsel, yet there was a complete failure to examine those documents for discovery purposes causing the circuit court to conclude such failure to be willful and an attempt to subvert the discovery process. We have held that

13

"[w]here a party's counsel intentionally or with gross negligence fails to obey an order of a circuit court to provide or permit discovery, the full range of sanctions under *W. Va. R. Civ. P.* 37(b) is available to the court and the party represented by that counsel must bear the consequences of counsel's actions." Syl. Pt. 4, *Bell v. Inland Mut. Ins. Co.*, 175 W. Va. 165, 332 S.E.2d 127, *cert. denied sub nom. Camden Fire Ins. Ass'n v. Justice*, 474 U.S. 936, 106 S.Ct. 299, 88 L. Ed.2d 277 (1985).

Syl. Pt. 2, *Woolwine v. Raleigh Gen. Hosp.*,194 W. Va. 322, 460 S.E.2d 457 (1995).

Finally, we reject the Petitioners' argument that the circuit court's dismissal of the cross-claims was premature because the court did not first conduct an evidentiary hearing. When the circuit court stated on the record its decision to dismiss the cross-claims and to convert the prior oral arguments and proffers made at the pretrial hearing into the evidentiary hearing, there was no objection raised at that time or thereafter by the Petitioners. Even though the circuit court notes objections and exceptions in its order imposing sanctions, there was no specific objection or concern raised by the Petitioners either in the order or during the discussion regarding the sanctions after the circuit court ruled regarding the evidentiary hearing. Moreover, the final order in this matter was not entered for months after the circuit court stated its intentions regarding the evidentiary hearing on the record, yet there is nothing in the appendix record that was filed by the Petitioners indicating any opposition to how the circuit court was handling the evidentiary hearing. Although there technically was no additional "evidentiary hearing" prior to the circuit court's ruling, the Petitioners did not note any specific objection to that fact in the appendix record before the Court.

14

As the Court noted in *Bell,* "Inland Mutual, by counsel, objected to the entry of the default judgment but it failed to develop at an evidentiary hearing the circumstances of that default judgment or otherwise preserve a record of the proceedings before the court." 175 W. Va. at 174-75, 332 S.E.2d at 136. Similarly, in the instant case, when the circuit court ruled how it was handling the Petitioners' request for an additional evidentiary hearing on the issue of sanctions, counsel for the Petitioners did not object to this or continue to request an evidentiary hearing at that time or thereafter. As we stated in *Bell*,

> It is axiomatic that this Court "can consider only those matters in the record in determining whether the court abused its discretion." *Evans v. Huntington Publishing Inc.*, 168 W. Va., 222, 283 S.E.2d 854, 855 (1981); *see also Thornton v. C.A.M.C.*, 172 W. Va., 360, 305 S.E.2d 316, 320-21 (1983); *Hylton v. Provident Life & Accident Insurance Co.*, 159 W. Va. 728, 226 S.E.2d 453 (1976).

*Bell*, 175 W. Va. at 175, 332 S.E.2d at 136-37. We, therefore, decline to address this argument due to the Petitioners' failure to preserve it properly before the circuit court.

## IV. Conclusion

Based upon the foregoing, the Court affirms the decision of the circuit court.

Affirmed.

15