460 S.E.2d 457

**Pamela Kay WOOLWINE, Plaintiff Below, Appellant,**

v.

**RALEIGH GENERAL HOSPITAL, A West Virginia Corporation, Robert Snidow, M.D., James Gwinn, M.D., Richard Thompson, M.D., Individually, and Raleigh Radiology, Inc., a West Virginia Corporation, Defendants Below, Appellees.**

No. 22538.

Supreme Court of Appeals of West Virginia.

Submitted May 16, 1995.

Decided July 11, 1995.

W.H. File, Jr., File, Payne, Scherer & File Beckley, for appellee, Raleigh General Hosp.

Richard W. Stuhr, Mark W. Carbone, Jacobson, Maynard, Tuschman & Kalur, for appellees, Robert Snidow, M.D. and James Gwinn, M.D.

Paul L. Weber, Richard L. Earles, Shuman, Annand & Poe, Charleston, for appellees Richard Thompson, M.D. and Raleigh Radiology, Inc.

## PER CURIAM:

This appeal involves a medical malpractice action that the Appellant filed in the Circuit Court of Raleigh County on October 19, 1992. The complaint alleges that the Appellees negligently treated an injury sustained by the Appellant. Based on the Appellant's attorney's failure to meaningfully participate in discovery, and counsel's disregard of an order permitting discovery, the circuit court granted the Appellees' motions for summary judgment. The Appellant asserts that the grant of summary judgment was inappropriate. We disagree. For the reasons set forth below, we hereby affirm the circuit court's order.

### I.

The Appellant's complaint alleges that the Appellees failed to properly diagnose a fracture in her middle finger. After answering the complaint, the Appellees propounded certain interrogatories to the Appellant in November 1992. These interrogatories requested, in part, information concerning the expert that the Appellant proposed to call in support of her malpractice claims. Among other things, the interrogatories requested (1) a name and address for the expert; (2) the subject matter on which the expert was to testify; (3) the facts and opinions on which the expert was to testify; and (4) a summary of the grounds for each opinion rendered by the expert.

Over six months later, on May 6, 1993, following a motion to compel filed by Raleigh General Hospital (hereinafter "the Hospital") on February 16, 1993, it appears that the Appellant answered the interrogatories served by the Hospital. The answer relating

Richard E. Hardison, Beckley, for appellant.

to the requested expert information, however, merely stated that "[p]ursuant to *Hulmes ex rel. [by] Vest v. Catterson* [,182 W.Va. 439, 388 S.E.2d 313 (1989) ] and W.Va.Code § 55–7B–6, said interrogatory is premature in the discovery process." No response appears to have been immediately forthcoming to the expert interrogatories filed by the other Appellees. Accordingly, on June 4, 1993, Appellees Snidow and Gwinn served a motion to compel answers to their interrogatories.[1]

While the record is slightly unclear, in September 1993, on the eve of the circuit court's scheduling conference, it appears that the Appellant finally answered the interrogatories propounded by Raleigh Radiology Inc. and Doctors, Thompson, Snidow and Gwinn. The responses to requests for information about the Appellant's expert, however, appear, as with the earlier answers to the Hospital's interrogatories, to have merely stated that, pursuant to *Hulmes* and West Virginia Code § 55–7B–6, an answer was premature.

The circuit court held a scheduling conference on September 13, 1993. Thereafter, a scheduling order was entered that required the Appellant, inter alia, to "disclose expert witnesses by January 31, 1994." The trial was set for May 17, 1994. The Appellant ultimately failed to comply with the January 31 disclosure deadline.[2] Given the lack of any apparent expert testimony to support the Appellant's claim, the Appellees filed motions for summary judgment in mid-February of 1994.[3] A hearing on the motions for summary judgment was noticed by the Appellees, again in mid-February 1994, for March 21, 1994.

The Appellant moved to continue the March 21 hearing in a motion that was filed on March 17, 1994.[4] On that same date, the Appellant filed a disclosure of his expert witness which stated as follows:

> Now comes the plaintiff, Pamela Kay Woolwine, by her counsel ... and announces to this Court that the plaintiff

1. While apparently unrelated to the interrogatories seeking information about the Appellant's proposed expert, the circuit court entered an order on June 28, 1993, directing the Appellant to respond to the Hospital's request for production of documents.

2. The Appellant's attorney asserts that his failure to name the expert was due to the fact that his "secretary was hospitalized on an emergency basis on January 24, 1994, and as a result his office was in chaos...."

3. It appears that Appellee Raleigh Radiology failed to move for summary judgment prior to the hearing. That Appellee, however, was represented by the same attorney who represented Dr. Thompson and that attorney moved for summary judgment on behalf of Raleigh Radiology at the circuit court's hearing on the matter. Counsel essentially represented that Raleigh Radiology was only named as a defendant on a respondeat superior basis as the employer of Dr. Thompson. Counsel thus argued that if Dr. Thompson was dismissed from the case, Raleigh Radiology would be entitled to a dismissal as well. The circuit court accepted this representation and the Appellant has not specifically excepted to the circuit court's determination.

4. Appellant's lawyer asserts that he was without the services of a trained legal secretary from January 24 to March 14, 1994, causing a "serious disruption" of his practice. He also asserts that he did not learn of the pending summary

judgment motions until approximately two weeks prior to the scheduled hearing. Upon learning of the outstanding motions, and prior to moving to continue the scheduled hearing, the Appellant's attorney contends that his replacement secretary attempted to have the hearing rescheduled because he planned to be out of the country on a previously scheduled trip. Via affidavit, the secretary, Ms. Barbragh Stafford, asserts, inter alia, as follows: (1) that she contacted attorney Richard Sturh's office (counsel for Doctors Snidow and Gwinn) on March 7, 1994 and advised a Martha Moore in Mr. Sturh's office that a continuance was necessary; (2) that Ms. Moore stated she would pass along the message to Mr. Sturh; (3) that she again contacted Ms. Moore on March 14, 1994, requesting anew an agreement to a continuance; (4) that Ms. Moore responded that Mr. Stuhr had not gotten back to her yet; (5) that she contacted Mr. Stuhr's office again on March 17, 1994, and advised of the filing of a formal motion for a continuance and the expert witness disclosure; (6) that she then unsuccessfully attempted to contact counsel for the remaining Appellees; (7) that attorney W.H. File, counsel for the Hospital, phoned her and rudely informed her that no continuance would be forthcoming.

At the hearing, Mr. File maintained that he tried to call the Appellant's attorney on three different days immediately preceding the hearing, but that the attorney would not take his calls.

*may call* Grant R. Bakin, M.D., as an expert witness in this action.

(emphasis added).

The circuit court ultimately held the scheduled hearing on the motions for summary judgment. At the hearing, the circuit court noted the Appellant's motion for a continuance and mentioned that the court had tried to contact Appellant's counsel that morning in an attempt to ascertain why the motion for a continuance was not filed earlier. The circuit court went on to explain as follows:

> Well, I believe that the hearing on the motion for summary judgment, to all the motions that are pending today, can go forward. I do not accept ... [counsel's] late motion for a continuance as being a basis to simply blindly put it off. It's difficult to imagine a trip to the Bahamas would suddenly materialize on a Thursday before you go and then take you out of the country; and given the history of this case, I think it needs to be attended to.

The circuit court also noted the Appellant's belated designation of Grant Bakin as a possible expert in the case and expressed displeasure that the tentative disclosure lacked even so much as an address of where the physician might be located.

The circuit court recited many of Appellant's counsel's dilatory actions during discovery that are detailed above. The court also noted as follows:

> For the sake of the record, I need I think to expand this a little bit to acknowledge that in at least one other case that I have

attended to with ... [this attorney] as plaintiff's counsel, we've had a similar problem with a similar result, and perhaps others before other judges. I think one reference was made to that by Mr. File.[5]

> ....

> *This is a pattern of conduct by plaintiff's counsel that is disturbing to the Court....* [W]ith that background, I find that plaintiff's counsel has, without good cause, refused to participate meaningfully in the efforts of all the defendants to conduct discovery in the case, in particular with respect to expert witnesses; that ... [counsel for the appellant] has failed to comply—and without good cause—to comply with this Court's scheduling order, which was entered after a good deal of effort to obtain discovery information; that the compliance or purported compliance on March 16th, 17th, or 18th, whichever date it could be counted from, by disclosing just the name of the doctor and nothing else is insufficient.

(footnote and emphasis added).

The circuit court then ordered the action dismissed on March 24, 1994, pursuant to West Virginia Rules of Civil Procedure 16 and 37. The Appellant filed a petition for appeal on July 25, 1994.[6]

We granted the petition on October 5, 1994. On February 8, 1995, Appellant's counsel requested a thirty-day extension of the briefing schedule. In response, the Clerk of the Court set down a modified briefing schedule on February 14, 1995, which

5. The case to which the circuit court was referring was *Chastity Quesenberry v. Associates in Obstetrics & Gynecology*, No. 92–C–727C, a medical malpractice claim that was filed in the Circuit Court of Raleigh County. Judge Thomas B. Canterbury apparently presided over the case. In *Quesenberry*, Appellant's counsel filed suit in September 1992. On May 12, 1993, the circuit court entered a scheduling order that required the parties to disclose expert witnesses by July 2, 1993. The plaintiff, however, failed to make the required disclosure on that date. The circuit court thereafter granted the plaintiff an extension of time until September 1, 1993, to make the designation. The plaintiff again failed to meet the court's deadline, and the defendant filed a motion for summary judgment on precisely the same grounds alleged by the instant Appellees. By order entered January 21, 1994, the circuit

court granted the motion and dismissed the action.

6. Some of the Appellees argue that the petition was untimely under West Virginia Rule of Appellate Procedure 3. Rule 3 provides, in pertinent part, that

> [n]o petition shall be presented for an appeal from, or a writ of supersedeas to, any judgment, decree or order, which shall have been rendered more than four months before such petition is filed in the office of the clerk of the circuit court where the judgment, decree or order being appealed was entered....

W.Va.R.App.P. 3(a). July 24, 1994, fell on a Sunday. Accordingly, the Appellant had until July 25 to file her petition, and the petition is thus timely. *See id.* at 16(a).

required the Appellant to file her brief no later than March 3, 1995. In a letter dated March 6, 1995, an associate of Appellant's counsel notified the Court that counsel would not be filing a brief. Instead, the associate stated that the Appellant "elects to submit her appeal on the initial petition for a writ of error filed herein." The petition essentially asserts that, given the circumstances of the case, a dismissal sanction was unduly harsh. We disagree.

## II.

■ West Virginia Rule of Civil Procedure 37 provides, in pertinent part, as follows:

> (2) Sanctions by Court in Which Action is Pending.—If a party ... fails to obey an order to provide or permit discovery [7] ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others are the following:
>
> . . . .
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, *or dismissing the action or proceeding or any part thereof,* or rendering a judgment by default against the disobedient party[.]

*Id.* 37(b)(2)(C) (footnote and emphasis added).

Rule 37 "is designed to provide sanctions in order to ensure that those persons who are subject to discovery requests promptly and adequately respond." *Shreve v. Warren Assocs., Inc.,* 177 W.Va. 600, 604, 355 S.E.2d 389, 393 (1987). It is axiomatic that the sanctions imposed "must depend on the facts of the individual case." *Id.* at 605, 355 S.E.2d at 394.

■ We discussed Rule 37 at some length in *Bell v. Inland Mutual Insurance Co.,* 175 W.Va. 165, 332 S.E.2d 127, *cert. denied sub nom. Camden Fire Ins. Ass'n v. Justice,* 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985). Syllabus point one of *Bell* provides that:

> The imposition of sanctions by a circuit court under *W.Va.R.Civ.P.* 37(b) for the failure of a party to obey the court's order to provide or permit discovery is within the sound discretion of the court and will not be disturbed upon appeal unless there has been an abuse of that discretion.

*Id.*

■ We have suggested that the sanction of dismissal under Rule 37(b)(2)(C) is "harsh[ ] ... and ... should be used sparingly." *State ex rel. McDowell County Sheriff's Dep't v. Stephens,* 192 W.Va. 341, 343, 452 S.E.2d 432, 434 (1994). At the same time, we have emphasized that where counsel, acting in gross negligent fashion, "fails to obey an order of a circuit court to provide or permit discovery, *the full range of sanctions under W.Va.R.Civ.P. 37(b) is available to the court* and the party represented by that counsel must bear the consequences of counsel's actions. Syl. Pt. 4, in part, *Bell,* 175 W.Va. at 168, 332 S.E.2d at 129 (emphasis added).

■ We described in *Bell* the procedural mechanism by which a circuit court might impose serious sanctions for violation of its discovery orders:

> The striking of pleadings and the rendering of judgment by default against a party as sanctions under *W.Va.R.Civ.P.* 37(b) for that party's failure to obey an order of a circuit court to provide or permit discovery may be imposed by the court where it has been established through an evidentiary hearing and in light of the full record before the court that the failure to comply has been due to willfulness, bad faith or fault of the disobedient party and

---

**7.** We agree with the circuit court that the Appellant's counsel's conduct in this matter was sanctionable under either West Virginia Rule of Civil Procedure 16(f) or 37(b)(2). Rule 16(f) provides for sanctions where a party or a party's attorney "fails to obey a scheduling or pretrial order" and permits the imposition of the sanctions contained in "Rule 37(b)(2)(B), (C), (D)." W.Va.R.Civ.P. 16(f). Rule 16(f) perhaps would have been the more appropriate rule to rely upon, given its direct application to counsel's disregard of scheduling orders. Nevertheless, the circuit court's scheduling order also clearly falls within the parameters of "an order to provide or permit discovery" under Rule 37(b)(2). Indeed, the order required the disclosure of arguably the most important discovery information in a medical malpractice case—the designation of a plaintiff's expert witnesses.

not the inability to comply and, further, that such sanctions are otherwise just.

175 W.Va. at 168, 332 S.E.2d at 129, Syl. Pt. 2.

■ In syllabus point three, we further set forth the respective evidentiary burdens of the parties at the hearing:

> Although the party seeking sanctions under *W.Va.R.Civ.P.* 37(b) has the burden of establishing noncompliance with the circuit court's order to provide or permit discovery, once established, *the burden is upon the disobedient party to avoid the sanctions sought under W.Va.R.Civ.P. 37(b) by showing that the inability to comply or special circumstances render the particular sanctions unjust.*

*Id.*, syl. pt. 3 (emphasis added).

■ This Court does not countenance an attorney's inexcusable disobedience of court orders. *See Michael v. Henry,* 177 W.Va. 494, 499, 354 S.E.2d 590, 595 (1987). Unfortunately, that is exactly what counsel in the instant case did. Further, counsel's disregard of the circuit court was coupled with a serious failure to participate in discovery generally. For instance, Appellant's lawyer knew as early as November 1992 that there was an intense interest in who would be serving as the Appellant's expert witness. Nevertheless, he was still claiming over eleven months later that he did not need to disclose this information. We also note the Appellees' representation at oral argument that Appellant's counsel, even when faced with an impending trial date, failed to notice any depositions or serve any written discovery.

When the circuit court issued its September 1993 order requiring the disclosure of expert witnesses by January 31, 1994, counsel noted no objections. The lawyer's claim that he could not comply with the deadline due to difficulties with his secretary is particularly disingenuous since counsel's secretary was apparently working up until January 24, one is left to wonder what efforts Appellant's counsel made to comply with the order during the months preceding his secretary's departure.

When the Appellees filed their motions for summary judgment and their notices of hearing, Appellant's counsel continued to act in derelict fashion. Even taking his representations as true, he knew of the hearing two weeks in advance. Even with this knowledge, however, he failed to file his motion to continue or the purported designation of his expert witness until just days prior to the hearing. When he did finally file the motion to continue, rather than trying to ascertain its status, he left the country. Further, Appellant's counsel's statement that he "may call" Dr. Bakin, without any supporting information about the physician, does not even approach the required disclosure.

■ At the hearing, the circuit court determined that the Appellees satisfied their burden of demonstrating that Appellant's counsel failed to comply with the circuit court's order, thus shifting the burden to him to show an inability to comply or special circumstances. Appellant's counsel obviously failed to do this, given that he neglected to attend the hearing. While he did attempt some post-hearing justifications, they are quite meager. Based on the record before it, then, the circuit court concluded that Appellant's counsel had engaged in a shocking pattern of grossly negligent and contumacious conduct. Our review of the record, and indeed counsel's continuing careless and inattentive conduct in this Court, leads us to the conclusion that the circuit court did not abuse its discretion in imposing the ultimate sanction.[8]

Affirmed.

BROTHERTON and RECHT, JJ., did not participate.

---

8. In almost any conceivable set of circumstances, a circuit court's failure to (1) warn of an impending ultimate sanction, or (2) consider less onerous sanctions before dismissing the case would amount to reversible error. *Hathcock v. Navistar Int'l Transp. Corp.,* 53 F.3d 36, 40–41 (4th Cir. 1995); *see Cox v. Department of Natural Resources,* Nos. 22484 and 22485, 194 W.Va. 210, 460 S.E.2d 25 (1995) (Cleckley, J., concurring). We would, however, characterize Appellant's counsel's egregious pattern of neglect as an exception to the rule. Under the narrow circumstances presented herein, we are unable to say that the circuit court erred.

MILLER, Retired J., sitting by temporary assignment.

FOX, J., sitting by temporary assignment.