557 S.E.2d 245

**Lora D. KISER, Plaintiff Below, Appellant**

v.

**Carrel Mayo CAUDILL, M.D., Defendant Below, Appellee.**

No. 28402.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 23, 2001.

Decided May 16, 2001.

Concurring and Dissenting Opinion of Justice Starcher July 9, 2001.

John R. Mitchell, Sr., Esq., E. Dixon Ericson, Esq., John R. Mitchell, L.C., Noelle A. Starek, Esq., White & Starek, Charleston, for Appellant.

William L. Mundy, Esq., Debra A. Nelson, Esq., Mundy & Adkins, Huntington, for Appellee.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered on October 20, 1999. In that order, the circuit court granted judgment as a matter of law in favor of the appellee and defendant below, Carrel Mayo Caudill, M.D. (hereinafter "appellee"), in this medical malpractice action filed by the appellant and plaintiff below, Lora D. Kiser (hereinafter "appellant"). In this appeal, the ap-

pellant contends that the circuit court erred by ruling that her only medical expert at trial, Charles Brill, M.D., a neurologist, was not qualified to render testimony on the standard of care required of a neurosurgeon. The appellant also contends that the circuit court erred by excluding James Barnes, M.D., as an expert witness prior to trial as a sanction for failure to comply with the expert disclosure deadline in the court's scheduling order.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order of the circuit court is affirmed, in part, reversed, in part, and this case is remanded for further proceedings.

### I.

The appellant was born with various congenital spinal abnormalities on August 12, 1973, at Raleigh General Hospital in Beckley, West Virginia. Due to her spinal problems, the appellant was referred to the appellee, a practicing neurosurgeon in Charleston, West Virginia. The appellee performed an exploratory laminectomy on the appellant when she was three months old to determine the nature of her problems.

According to the appellant, the appellee told her parents that she had a tethered spinal cord, but did not explain the significance of this condition or recommend further surgery or testing. As the appellant grew older, her condition became worse. She was unable to walk without assistance at two years of age, and by·age six, she lacked significant control of some bodily functions. Finally, at age ten, the appellant underwent a surgical procedure to release her tethered spinal cord at a hospital in Kentucky. The appellant eventually regained control of her bodily functions, but she is a paraplegic and is permanently confined to a wheel chair.

On December 2, 1992, the appellant and her parents filed this medical malpractice action against the appellee.[1] The appellant alleged, *inter alia*, that the appellee failed to perform the proper and necessary surgical procedure, failed to diagnose her condition during the exploratory operative procedure, and failed to advise of the proper postoperative treatment. After several years of discovery, trial was scheduled to begin on August 4, 1997.

During a pre-trial hearing on July 28, 1997, the circuit court ruled that Dr. Barnes, one of the appellant's expert witnesses, would not be permitted to testify because he was untimely disclosed as an expert witness pursuant to the court's scheduling order. A few days later, a continuance was granted, and the case was not actually brought to trial until July 26, 1999. Shortly after the trial began, the circuit court ruled that the appellant's other expert witness, Dr. Charles Brill, a neurologist, was not qualified to render an opinion as to the applicable standard of care required of a neurosurgeon. As a result of the appellant's failure to present any evidence with regard to the applicable standard of care, the appellee moved for judgement as a matter of law. The circuit court granted the motion finding that the appellant had failed to sustain a *prima facie* case of medical negligence. This appeal followed.

### II.

[1] We begin our analysis of the issues in this case by first setting forth the standard of review for the granting of a motion for judgment as a matter of law. Pursuant to Rule 50(a) of the West Virginia Rules of Civil Procedure, a defendant may move for judgment as a matter of law "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue[.]" In Syllabus Point 3 of *Brannon v. Riffle*, 197 W.Va. 97, 475 S.E.2d 97 (1996), this Court held that:

> The appellate standard of review for the granting of a motion for [judgment as a matter of law][2] pursuant to Rule 50 of the

---

**1.** The appellant's parents were eventually dismissed from the case after the parties agreed that their claims were barred by the statute of limitations.

**2.** The phrase "judgement as a matter of law" replaced the term "directed verdict" when the West Virginia Rules of Civil Procedure were amended in 1998. The amendment did not af-

West Virginia Rules of Civil Procedure is de novo. On appeal, this court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of [judgment as a matter of law] when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting [judgment as a matter of law] will be reversed.

In this case, the circuit court granted the appellee's motion for judgment as a matter of law after determining that the appellant had failed to present evidence with regard to the applicable standard of care and whether the appellee deviated from that standard. Such evidence is required in a medical malpractice action by W.Va.Code § 55–7B–3 (1986) which provides, in pertinent part:

The following are necessary elements of proof that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care:

(a) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances[.]

The appellant contends that she was unable to present a prima facie case of medical negligence because of the circuit court's rulings limiting the testimony of Dr. Brill and prohibiting the testimony of Dr. Barnes. Accordingly, we must now examine those rulings.

 The circuit court ruled that Dr. Brill, a pediatric neurologist, was not qualified to testify as to the standard of care in this case because he acknowledged that he was not an expert in neurosurgery. In Syllabus Point 5 of *Mayhorn v. Logan Medical Foundation*, 193 W.Va. 42, 454 S.E.2d 87 (1994) this Court once again set forth the standard used when reviewing a trial court's decision to qualify an expert:

fect either the standard by which a trial court reviews motions under the rule or the standard by which this Court reviews a trial court's rul-

" ' " 'Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused.' Point 5, syllabus, *Overton v. Fields*, 145 W.Va. 797 [117 S.E.2d 598 (1960) ]." Syllabus Point 4, *Hall v. Nello Teer Co.*, 157 W.Va. 582, 203 S.E.2d 145 (1974).' Syllabus Point 12, *Board of Education v. Zando, Martin & Milstead*, 182 W.Va. 597, 390 S.E.2d 796 (1990)." Syl. pt. 3, *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993).

In Syllabus Point 6 of *Mayhorn*, this Court also explained that,

Rule 702 of the *West Virginia Rules of Evidence* is the paramount authority for determining whether or not an expert is qualified to give an opinion. Therefore, to the extent that *Gilman v. Choi*, 185 W.Va. 177, 406 S.E.2d 200 (1990) indicates that the legislature may by statute determine when an expert is qualified to state an opinion, it is overruled.

In other words, this Court held that Rule 702 and not W.Va.Code § 55–7B–7 (1986) is determinative of whether an expert is qualified to state an opinion. Rules 702 provides that:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

 Although "[a] medical expert, otherwise qualified, is not barred from testifying merely because he or she is not *engaged in practice* as a specialist in the field about which his or her testimony is offered . . . it is clear that a medical expert may not testify about any medical subject without limitation." *Gilman v. Choi*, 185 W.Va. 177, 181, 406 S.E.2d 200, 204 (1990) (citation omitted) *overruled on other grounds as stated in Mayhorn, supra.* "[T]o qualify a witness as an expert on that standard of care, the party offering the witness must establish that the

ings. *Barefoot v. Sundale Nursing Home*, 193 W.Va. 475, 482, n. 7, 457 S.E.2d 152, 159, n. 7 (1995).

witness has more than a casual familiarity with the standard of care and treatment commonly practiced by physicians engaged in the defendant's specialty." *Id.* In the case *sub judice,* the trial court determined that Dr. Brill, a board-certified pediatric neurologist, was not qualified to testify regarding the standard of care required of a neurosurgeon in 1973. Thus, Dr. Brill was not allowed to testify about the skill required of a neurosurgeon or how surgery involving a tethered spinal cord would be performed. Essentially, Dr. Brill's testimony was limited to the field of neurology, and he was only permitted to testify about the diagnosis and general treatment of tethered spinal cords.

After examining the record in this case, we do not find that the circuit court abused its discretion by limiting the testimony of Dr. Brill at trial to the field of neurology. During his deposition in February 1997, Dr. Brill stated that he did not plan to testify about the standard of care required of a neurosurgeon in this case. He also stated that he was merely an expert in referring patients to neurosurgeons, but he did not hold himself out to be an expert in the field of neurosurgery. Dr. Brill further indicated that he did not know whether the standard of care for the treatment of a tethered spinal cord had changed from 1973 to the present. In addition, at trial, during cross-examination by the appellee regarding his qualifications, Dr. Brill acknowledged that he was not qualified or trained in the field of neurosurgery and was not familiar with the manner in which neurosurgical procedures are performed. Given Dr. Brill's own admissions about his limited knowledge of neurosurgery, we do not find that the circuit court erred by limiting his testimony at trial to the field of neurology.

■ The circuit court also precluded the appellant from calling Dr. Barnes as an expert witness as a sanction for failure to comply with the expert disclosure deadline in the court's scheduling order. On December 12, 1996, the court entered a scheduling order setting the trial of this case for August 4, 1997, with a discovery cut-off date of July 15, 1997. In addition, the appellant was ordered to identify all fact and expert witnesses by January 10, 1997.

It is undisputed that the appellant did not disclose Dr. Barnes as an expert witness within the time period set by the court.[3] At the pre-trial hearing on July 28, 1997, the circuit court denied the appellant's request for a continuance of the trial and her request to allow Dr. Barnes to testify as an expert in the case. The court noted that the appellant had failed to timely disclose Dr. Barnes as an expert witness, and had further failed to file a motion requesting that Dr. Barnes be allowed to testify even though he was untimely disclosed. A few days later, the trial was continued, apparently because the circuit court was involved in the trial of another case. In any event, this case was not brought to trial until two years later.

In the meantime, the parties could not agree as to the content of the order to be entered reflecting the court's rulings from the July 28, 1997 pre-trial hearing. The record reveals that several letters and proposed orders were passed back and forth between counsel for the parties. However, they could not agree as to whether the circuit court had in fact excluded Dr. Barnes from testifying and whether the circuit court had limited Dr. Brill's testimony to the field of neurology. Eventually, a hearing was held on July 17, 1998, to clarify the court's rulings. During that hearing, the court once again ruled that Dr. Barnes would not be permitted to testify because he was named as a witness after the expert disclosure deadline expired.

■ In Syllabus Point 1 of *Kincaid v. Southern West Virginia Clinic, Inc.,* 197 W.Va. 145, 475 S.E.2d 145 (1996), this Court held that:

"The imposition of sanctions by a circuit court under *W. Va. R. Civ. P.* 37(b) for the failure of a party to obey the court's order to provide or permit discovery is within the

---

3. We note that counsel for the appellant claims that he told appellee's counsel that he wanted to use Dr. Barnes as an expert five weeks after the expert disclosure deadline expired. However, the appellee's counsel maintains that he did not learn about Dr. Barnes until he filed a motion for summary judgment in June 1997.

sound discretion of the court and will not be disturbed upon appeal unless there has been an abuse of that discretion." Syl. Pt. 1, *Bell v. Inland Mut. Ins. Co.*, 175 W.Va. 165, 332 S.E.2d 127, *cert. denied sub nom. Camden Fire Ins. Ass'n v. Justice*, 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985).

However, we have also recognized that "[b]oth Rule 16(f) and 37(b) of the Rules of Civil Procedure allow the imposition of only those sanctions that are 'just.'" *Bartles v. Hinkle*, 196 W.Va. 381, 390, 472 S.E.2d 827, 836 (1996) (citation omitted). In Syllabus Point 2 *of Bartles* this Court held that:

> In formulating the appropriate sanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case.

After reviewing the record in this case, we believe that the circuit court's initial ruling on July 28, 1997, prohibiting Dr. Barnes from testifying was proper. The trial was scheduled to begin on August 4, 1997, and at that point, the appellant had not presented a motion to the court requesting that Dr. Barnes be permitted to testify as an expert witness even though he was disclosed after the scheduling order deadline had expired. Clearly, the appellee would have been prejudiced if Dr. Barnes had been permitted to testify as the trial was scheduled to begin just a few days later. However, the trial was continued.

Even though the case was not brought to trial until two years later, the circuit court continued to rule that Dr. Barnes would not be permitted to testify. The only reason given for this ruling was that "it was too late" for him to be named as an expert witness. In so ruling, we believe that the circuit court abused its discretion. The record in this case contains several motions filed by the appellant in an attempt to have Dr. Barnes recognized as an expert witness after the trial was continued in 1997. Dr. Barnes was even made available for a deposition on several occasions. Unsurprisingly, the appellee continuously refused to take Dr. Barnes' deposition relying upon the court's prior orders that he could not be called as an expert witness.

▮ The failure to timely disclose an expert witness is serious conduct that may warrant the exclusion of that expert's testimony and ultimately lead to dismissal of the case. *See, e.g., Kincaid, supra; Sheely v. Pinion*, 200 W.Va. 472, 490 S.E.2d 291 (1997); *Woolwine v. Raleigh General Hosp.*, 194 W.Va. 322, 460 S.E.2d 457 (1995). However, in the case *sub judice*, the conduct was an isolated occurrence, and there is no evidence of a pattern of wrongdoing in this case with respect to discovery matters. The appellant states that Dr. Barnes was not timely disclosed because she initially believed Dr. Brill would be able to provide the necessary expert testimony. After she learned that the appellee was going to challenge Dr. Brill's qualifications, she informed him that Dr. Barnes would also be testifying as an expert witness. Certainly, the appellant should have filed a motion with the circuit court to have Dr. Barnes recognized as an expert witness as soon as she believed that his testimony would be necessary. As we noted above, the late disclosure combined with the appellant's failure to file such a motion warranted the circuit court's initial ruling excluding Dr. Barnes' testimony. However, this case was not tried for another two years after Dr. Barnes was named as a witness and for this reason, we believe that the circuit court erred by continuing to exclude his testimony.

There was ample opportunity for additional discovery with respect to Dr. Barnes after the trial was continued in 1997. The record suggests that this discovery did not occur in part because of the inability of counsel for the parties to agree on the content of the order to be entered with regard to the pretrial hearing held on July 28, 1997. Rule

16(e) of the West Virginia Rules of Civil Procedures addresses pre-trial orders and requires that "[a]fter any conference held pursuant to this rule, an order shall be entered reciting the action taken."

The delay caused by the inability of counsel for the parties to agree on the content of the pre-trial order is inexcusable. It is unfortunate that one of the reasons cases linger in our courts today is the delay caused by disagreements among attorneys regarding the content of court orders. In these situations, we believe that attorneys have an affirmative duty to bring the matter to the court's attention by motion or otherwise so that a timely order may be entered.[4] As noted above, a hearing was necessary to resolve the conflict about the pre-trial order in this case. However, the matter was not brought to the court's attention until almost a year after the first hearing occurred. As a result, the trial of this case was delayed for more than a year.

However, even after the pre-trial order was entered, this case was not tried for yet another year. During that time, Dr. Barnes should have been recognized as an expert witness and discovery should have been reopened to allow the appellee to depose Dr. Barnes. This Court has often noted that " 'it is the policy of the law to favor the trial of all cases on their merits[.]' " *Davis v. Sheppe*, 187 W.Va. 194, 197, 417 S.E.2d 113, 116 (1992) (citation omitted). Accordingly, we find that the circuit court abused its discretion by refusing to recognize Dr. Barnes as an expert witness in this case and to allow him to testify at trial. Therefore, the final order of the Circuit Court of Kanawha County entered on October 20, 1999, is affirmed, in part, reversed, in part, and this case is remanded for further proceedings consistent with this opinion.

Affirmed, in part, Reversed, in part, and Remanded.

STARCHER, Justice, concurring, in part, and dissenting, in part.

(Filed July 9, 2001)

I concur with the majority opinion's decision to reverse the trial court's directed verdict for the defendant, Dr. Carrel Mayo Caudill. The majority correctly acknowledges that, although counsel for the plaintiff, Lora D. Kiser, may have been dilatory in producing Dr. Barnes as an expert, his testimony should have been allowed at trial. The defendant had over 2 years to take Dr. Barnes' deposition and prepare for trial—his disclosure could in no way be termed a "surprise."

I dissent, however, to the majority opinion's holding that the circuit court fairly excluded testimony by the other expert for the plaintiff, Dr. Brill, regarding the standard of care the defendant should have exercised. Dr. Brill was qualified to give an opinion about the standard of care which a doctor should have followed in 1973 regarding a neurological problem such as a tethered spinal cord, and an opinion that the defendant doctor had breached the standard of care. The circuit court essentially excluded Dr.

---

**4.** We note that while this case was pending, this Court promulgated and adopted Rule 24.01 of the West Virginia Trial Court Rules which addresses the preparation and submission of orders. Rule 24.01(a) states that "all orders shall be submitted to the judicial officer promptly, but no later than eleven (11) days after having been directed to do so by the court." If the parties are unable to agree as to the wording or content of a proposed order, Rule 24.01(d) provides that:

In the event counsel has any objections regarding the wording or content of a proposed order, counsel shall have the affirmative duty of contacting the preparer thereof before contacting the judicial officer in an effort to seek a resolution of the conflict. If the conflict cannot be resolved in this manner, counsel having an objection shall promptly submit a proposed order to the judicial officer and opposing counsel as set forth in subsection (c) along with a letter to the judicial officer, indicating the reason for the change(s). Within five (5) days following receipt of objections and the responsive proposed order, all counsel shall file a response to the second proposed order. If the judicial officer determines that a hearing is necessary to resolve the conflict, counsel objecting to the order shall be responsible for promptly scheduling the same. Objecting, proposing modifications, or agreeing to the form of a proposed order shall not affect a party's rights to appeal the substance of the order.

This rule, like the Rules of Civil Procedure, was designed to help secure just, speedy, and inexpensive determinations in every case. Hopefully, by adopting this rule, delays like the one in the case *sub judice* will no longer occur.

Brill's opinions because he was a "neurologist," not a "neurosurgeon."

The issue in this case was not whether Dr. Caudill erred in some surgical procedure performed upon the plaintiff; the issue was whether he should have performed surgery at all, or referred the plaintiff to another doctor for surgery. Dr. Brill was highly qualified in the area of diagnosing and treating pediatric neurologic problems, and could address these questions, regardless of whether he ever performed neurologic surgery himself.

The theory of the plaintiff's case was that in 1973, Dr. Caudill diagnosed the plaintiff with a tethered spinal cord, but that he was negligent in not explaining the significance of the tethered cord, or suggesting any other course of action, to the plaintiff's parents. After he saw the plaintiff's condition, he did nothing about it. In essence, the plaintiff contends that Dr. Caudill should have recommended additional surgery, further testing, or further examination by another specialist—and contends that had this been done, many of the plaintiff's problems may have been avoided.

Dr. Brill, a specialist in pediatrics and neurology, was offered by the plaintiff to give an opinion about Dr. Caudill's conduct in 1973.

Dr. Brill testified that he received his medical degree from Columbia University in New York City, and that he is licensed to practice medicine in Pennsylvania, Delaware, and New Jersey. More importantly, Dr. Brill testified that he is a specialist in pediatric neurology, and that he has been board certified in pediatrics and neurology. In fact, Dr. Brill indicated that he himself was a board examiner for those fields.

Dr. Brill testified that he had routinely diagnosed and treated children with neurologic problems. He indicated that he had examined and diagnosed thousands of children with neurologic diseases. For the 12 years preceding his testimony he had been teaching pediatrics and neurology at Thomas Jefferson University in Philadelphia, Pennsylvania.

Dr. Brill stated that he was an expert on the pediatric and neurologic processes used in 1973, and had done extensive reading on the topic. He was familiar with the standard of care in 1973 for the diagnosis and treatment of neurologic conditions, including a tethered spinal cord. He also stated that based upon his experience and reading he was able to testify as to the standard of care in diagnosing and treating neurologic conditions, including recognizing the symptoms of a tethered cord, determining whether surgical intervention was warranted, and determining whether a doctor should have referred a patient for surgery.

Based upon these qualifications, Dr. Brill gave the opinion that the defendant, Dr. Caudill, breached the standard of care in 1973 when treating the plaintiff.

This Court has made patently clear that "Rule 702 of the *West Virginia Rules of Evidence* is the paramount authority for determining whether or not an expert is qualified to give an opinion." Syllabus Point 6, in part, *Mayhorn v. Logan Medical Foundation*, 193 W.Va. 42, 454 S.E.2d 87 (1994). This Court should therefore have looked to Rule 702 to determine whether Dr. Brill was qualified to give an opinion.

*West Virginia Rules of Evidence* Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

"Rule 702 has three major requirements: (1) the witness must be an expert; (2) the expert must testify to scientific, technical or specialized knowledge; and (3) the expert testimony must assist the trier of fact." *Gentry v. Mangum*, 195 W.Va. 512, 524, 466 S.E.2d 171, 183 (1995)

The majority opinion should have focused on the first requirement of Rule 702—that the proffered witness was an expert "by knowledge, skill, experience, training, or education"—and the fact that this requirement has been liberally construed by this Court.

We stated in *Gentry v. Mangum* that in determining who qualifies as an expert, a trial court should conduct a two-step inquiry.

First, a circuit judge must determine whether the proposed expert (a) meets the minimal educational or experiential qualifications (b) in a field that is relevant to the subject under investigation (c) which will assist the trier of fact. Second, the circuit court must determine that the expert's area of expertise covers the particular opinion as to which the expert seeks to testify. There must be a match.

195 W.Va. at 525, 466 S.E.2d at 184. *See also,* Syllabus Point 5 of *Gentry v. Mangum.* We cautioned in *Gentry v. Mangum* "that there is no 'best expert' rule. Because of the 'liberal thrust' of the rules pertaining to experts, circuit courts should err on the side of admissibility." *Id.*

When this standard is applied to the case at hand, it is clear that the circuit court abused its discretion in refusing to qualify Dr. Brill as an expert. Applying the test set forth in *Gentry,* it is apparent that first, Dr. Brill (a) had substantial educational and experiential qualifications relating to pediatric neurologic problems; (b) that his field of expertise is relevant to the diagnosis and treatment of tethered spinal cords in children; and (c) this expertise would have assisted the trier of fact. Second, this expertise relates to the testimony that Dr. Brill was anticipated to give a trial: that the defendant was negligent in his treatment of the plaintiff's tethered spinal cord.

The mere fact that Dr. Brill stated he did not perform pediatric neurologic surgery is irrelevant. He could still give an opinion on how the average doctor, in 1973, would go about diagnosing and treating a tethered spinal cord. Based upon this record, I would have ruled that the circuit court abused its discretion in refusing to qualify Dr. Brill as an expert.

I therefore respectfully concur, in part, and dissent, in part, to the majority's opinion.