# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Cherie Lawyer and Tony Lawyer,**
**Plaintiffs Below, Petitioners**

**FILED**

November 22, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 12-1449** (Morgan County 09-C-50)

**Morgan County War Memorial Hospital,**
**Anthony A. Dasilva, M.D. and Jeffrey T.**
**Cook, M.D., Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioners Cherie Lawyer and Tony Lawyer, by counsel Matthew A. Nace, and D. Michael Burke, appeal the October 22, 2012, order of the circuit court denying their motion for a new trial and/or judgment notwithstanding the verdict. Respondents Morgan County War Memorial Hospital, by counsel Tyler J. Smith, Louis C. Long, and Rochelle Moore, and Respondents Anthony Dasilva, M.D., and Jeffrey Cook, M.D., by counsel Perry W. Oxley, David E. Rich, and J. Jarrod Jordan, filed a joint response. Petitioners filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2006, Cherie and Tony Lawyer's son, Josh, was walking his German Shepard puppy in the woods. The boy spotted a raccoon acting strangely. The boy did not touch the raccoon and he held the dog on a leash.[1] The boy returned home and advised his father of what he found. Mr. Lawyer went to find the raccoon about a mile from their home, and killed it. Mr. Lawyer made several attempts to have the proper agency retrieve the raccoon, without success. Mr. Lawyer bagged the raccoon and transported it to a veterinarian for testing. On approximately the fourth day following the incident, the Lawyer family learned that the raccoon tested positive for rabies.

The entire family had contact with their dog after the incident. Concerned about the possibility of rabies exposure, the Lawyer family appeared at the Respondent Hospital. Dr. Dasilva advised the family of their options. He advised that they could wait for ten days, during which time the dog would be observed.[2] He ultimately determined to order the rabies vaccine

---

[1]Respondents contend that the medical history provided to the treating physician indicated that the dog licked the raccoon. Petitioners respond they never reported that the dog licked or touched the raccoon.

[2]We note that the dog did not develop rabies.

1

and immune-globulin injections. Shortly after the third injection, Mrs. Lawyer became seriously ill. She was ultimately diagnosed as being legally blind and having an assortment of immunological issues.

Petitioners filed suit seeking economic damages in the form of past medical bills of approximately $130,000, and future economic damages of approximately $1,400,000. Petitioners also sought non-economic damages. At trial, petitioners presented expert testimony, including testimony from treating physicians, that connected the rabies vaccinations with Mrs. Lawyer's injuries. Petitioners contend that it was a violation of the standard of care for respondents to administer the rabies vaccination to Mrs. Lawyer because she never came in contact with the raccoon, and therefore she did not have an "exposure." Petitioners further argued that the hospital failed to follow its policies and procedures regarding the administration of the rabies vaccination; failed to obtain informed consent; that Dr. Dasilva failed to conduct a proper history and physical and negligently administered the vaccination; and that Dr. Cook failed to meet the standard of care in failing to evaluate Mrs. Lawyer in any regard on her subsequent inoculations.

Following trial, the jury returned a verdict in favor of respondents. Thereafter, petitioners filed a motion for a new trial and/or judgment notwithstanding the verdict. The circuit court denied the motion by order entered October 22, 2012. Petitioners appeal this ruling and request that we remand the matter for a new trial.

In the instant proceeding, we are asked to review an appeal from a circuit court order denying petitioners' post-trial motion. We begin by acknowledging this Court's standard of review. In Syllabus Point 6 of *Smith v. Andreini*, 223 W.Va. 605, 678 S.E.2d 858 (2009), we held:

> "'Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.' Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976)." Syl. Pt. 1, *Foster v. Sakhai,* 210 W.Va. 716, 559 S.E.2d 53 (2001).

This Court also explained in Syllabus Point 1 of *James v. Knotts*, 227 W.Va. 65, 705 S.E.2d 572 (2010), in part, that

> In reviewing a trial court's denial of a motion for judgment notwithstanding the verdict, it is not the task of the appellate court reviewing facts to determine how it would have ruled on the evidence presented. Its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, in ruling on a denial of a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the nonmoving party. If on review, the evidence is shown to be legally insufficient to sustain the verdict, it is the obligation of the appellate court to reverse the circuit court and to order judgment for the appellant.' Syllabus Point 1, *Alkire v. First National Bank of Parsons,* 197 W.Va. 122, 475 S.E.2d 122 (1996)." Syllabus Point 3,

*Pipemasters, Inc. v. Putnam County Comm'n,* 218 W.Va. 512, 625 S.E.2d 274 (2005).

Mindful of these principles, we turn to petitioners' arguments. Petitioners assert several assignments of error but primarily contend that the circuit court erred by allowing the testimony of respondents' expert witness, Mathias Schnell, Ph.D. Petitioners maintain that Dr. Schnell was not qualified to offer standard of care testimony in this medical professional liability case because he is not a physician. Furthermore, petitioners argue that Dr. Schnell's testimony on the "vector theory" of rabies transmission was "junk science" because it was nothing more than his hypothesis that the rabies virus could be picked up by one animal and transferred to a human without the animal being infected. We note that the issue of "[w]hether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused." Syl. Pt. 3, *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993) (citations omitted), *cert. denied*, 114 S.Ct. 2137 (1994); *See also Kiser v. Caudill,* 210 W.Va. 191, 195, 557 S.E.2d 245, 249 (2001); and *Walker v. Sharma*, 221 W.Va. 559, 563, 655 S.E.2d 775, 779 (2007).

Petitioners rely on West Virginia Code § 55-7B-7(a) for the proposition that Dr. Schnell could not opine on the standard of care because he is not a physician. However, that statute provides that the applicable standard of care "shall be established in medical professional liability cases by the *plaintiff* . . . [by testimony of an expert witness, and] the expert witness maintains a current license to practice medicine." (Emphasis supplied). The statute is silent on the qualifications required of a defense standard of care expert. Furthermore, in *Mayhorn v. Logan Medical Foundation*, 193 W.Va. 42, 454 S.E.2d 87 (1994), this Court repudiated West Virginia Code § 55-7B-7(a) as setting the appropriate criteria for assessing the qualifications of a standard of care expert.[3] In *Mayhorn*, we held that Rule 702 of the West Virginia Rules of

---

[3]In *Mayhorn*, we explained that

> [t]his Court has complete authority to determine an expert's qualifications pursuant to its constitutional rule-making authority. *See W.Va. Const.* art. VIII, § 3 (which states, in relevant part, that the Supreme Court of Appeals of West Virginia "shall have power to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the State relating to writs, warrants, process practice and procedure, which shall have the force and effect of law.") and syllabus point 1, *Bennett v. Warner,* 179 W.Va. 742, 372 S.E.2d 920 (1988) ("Under article [VIII], section three of our Constitution, the Supreme Court of Appeals shall have the power to promulgate rules for all of the courts of the State related to process, practice, and procedure, which shall have the force and effect of law.") *See also* Cleckley, [2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* (3rd ed. 1994)] § 7-2(A)(1), at 30. Additionally, this Court recently held that "[t]he West Virginia Rules of Evidence remain the paramount authority in determining the admissibility of evidence in circuit courts. These rules constitute more than a mere refinement of common law evidentiary rules, they are a comprehensive reformulation of them." Syl. pt. 7, *State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994). *See also Teter v. Old Colony Co.,* 190 W.Va.

Evidence is the paramount authority for determining whether an expert is qualified to give an opinion. *Id.* at Syl. Pt. 6.[4]

Based on our review of the record, we find that the circuit court did not abuse its discretion by allowing Dr. Schnell's testimony. Dr. Schnell was offered and qualified as an expert under Rule 702 in the fields of immunology, biochemistry and molecular biology. Examination of his curriculum vitae reveals that he spent almost his entire academic career and extensive work experience dealing with the subjects of rabies and rabies vaccine. Furthermore, Dr. Schnell testified that he made recommendations to physicians when he was called to advise whether a patient should receive the rabies vaccine.

This Court also finds that the circuit court did not abuse its discretion by admitting Dr. Schnell's testimony on the "vector theory." Circuit courts have broad discretion and authority to determine whether scientific evidence is trustworthy, even if the technique involved has not yet won general scientific acclaim. *Gentry v. Mangum,* 195 W.Va. 512, 521, 466 S.E.2d 171, 180 (1995). When considering the admissibility of novel scientific evidence, circuit courts employ a two-part analysis:

> When scientific evidence is proffered, a circuit court in its "gatekeeper" role under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993), *cert. denied*, [511] U.S. [1129], 114 S.Ct. 2137, 128 L.Ed.2d 867 (1994), must engage in a two-part analysis in regard to the expert testimony. First, the circuit court must determine whether the expert testimony reflects scientific knowledge, whether the findings are derived by scientific method, and whether the work product amounts to good science. Second, the circuit court must ensure that the scientific testimony is relevant to the task at hand.

*Id.* at Syl. Pt. 4. Under a *Daubert/Wilt* analysis, the circuit court "*is not to decide whether the proffered evidence is right, but whether the science is valid enough to be reliable.*" *Harris v. CSX Transportation, Inc.,* __ W.Va. __, __ S.E.2d __ 2013 WL 6050961 page 7 (Nov. 13, 2013) (quoting *Gentry*, 195 W.Va. at 523, 466 S.E.2d at 182) (emphasis in original).

Dr. Schnell testified that the "vector theory" was based upon situations where there is a recognized risk of indirect transmission. The primary evidence that formed the basis for his opinion is the fact the rabies virus exists in saliva and that virus can be transported or carried from a rabid animal to a person by another animal. He testified that the scientific evidence demonstrates that the rabies virus is stable and can be transmitted for an extended period, probably twenty-four hours. We therefore agree with the circuit court that the opinion of Dr. Schnell was valid enough to be reliable; whether the evidence was right was a question for the

---

711, 724, 441 S.E.2d 728, 741 (1994). *Mayhorn*, 193 W.Va. at 49, 454 S.E.2d at 94 (1994).

[4]We therefore decline to address petitioners' constitutional arguments challenging West Virginia Code § 55-7B-7.

jury. *Harris v. CSX Transportation, Inc.,* __ W.Va. __, __ S.E.2d __ 2013 WL 6050961 page 8 (Nov. 13, 2013). Furthermore, the lack of textual authority for his opinion goes to the weight and not to the admissibility of his testimony. *Id.* at page 7.

The central issue in this case is whether it was appropriate for Dr. Dasilva to administer the rabies vaccine to Mrs. Lawyer. Since the disease itself invariably leads to a dreadful death, the use of the vaccine may be justified on the slim possibility of indirect transmission, notwithstanding the unavoidable high degree of risk associated with the vaccine.[5] Dr. Schnell testified that Mrs. Lawyer was a candidate to receive the vaccine based on his extensive knowledge of the rabies virus. We therefore agree with the circuit court that his expert testimony reflected scientific knowledge and was relevant. Additionally, Donald Yealy, M.D., respondents' expert witness in the field of emergency room medicine, testified unequivocally that Dr. Dasilva's decision to administer the vaccine was within the standard of care.[6] The record demonstrates that Dr. Yealy also discussed the possibility of indirect transmission of the rabies virus, without objection.

The final issue raised by petitioner is that the cumulative effect of the alleged errors below resulted in an unfair trial requiring reversal under the cumulative error doctrine. Among other things, petitioners complain that the circuit court denied their motion to appoint a discovery master to ascertain the veracity of documents filed in these proceedings. We find that this assignment of error lacks merit. This Court declines to disturb the circuit court's broad discretion and authority to manage and control its proceedings. *See generally, Tennant v. Marion Health Care Found., Inc.,* 194 W.Va. 97, 459 S.E.2d 374 (1995).

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 22, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[5] *See generally Hitchcock v. U.S.*, 479 F.Supp. 65, 74 (D.C.D.C 1979) ("Postexposure [i]mmunization [i]ndications for and against giving rabies vaccine are difficult to define. In favor of giving it is the fact that, if rabies develops, it will almost certainly have fatal results. Against giving it is the danger of development of severe side-effects involving the central nervous system when vaccine contains brain tissue.").

[6] We therefore find that the record does not support petitioners' contention that the clear weight of the evidence established that Dr. Dasilva violated the standard of care.

5